FILED

FEB 19 2020

TIMOTHY M. O'BRIEN CLERK
By_____C4_____Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY, KANSAS

|  |  |  |
|---|---|---|
| GANIYU AYINLA JAIYEOLA, | ) ) ) | Case No.: 2:20-CV-2068- JWB -JPO |
| *Plaintiff,* | ) ) | COMPLAINT |
| v. | ) ) | |
| GARMIN INTERNATIONAL, INC., | ) ) | JURY TRIAL DEMANDED |
| *Defendant.* | ) ) ) ) ) | |

## Introduction

1.      Plaintiff Ganiyu Jaiyeola ("Jaiyeola") alleges Defendant Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff, violated Plaintiff's rights under Title VII of the Civil

Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and

National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as

amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of

the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment

Act[1] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of

Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due

Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the

fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee with

---

[1] See

http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/04
4_011_0013_section/044_011_0013_k/

a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[2].

2.     In November 2019, Garmin failed to hire Jaiyeola, then age 64, for the "Advanced Materials Engineer - Metals-19001CL" position he had applied and interviewed for.  On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).  Both Garmin Managers remarked that Jaiyeola had highly pertinent qualifications and experience for the Garmin job under consideration.  Indeed, the next day (July 26, 2019), Garmin invited Jaiyeola for an on-site interview at Garmin Headquarters/Manufacturing Center in Olathe, Kansas.

3.     A recent diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score. The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[3].

## Parties

4.     Plaintiff Jaiyeola was born on June 22, 1955 in Nigeria and has been 64 years old or older at all pertinent times referenced herein.  He is Black, his national origin is Nigerian, he is a naturalized citizen of the United States, he is a current resident of Grand Rapids, Kent County, Michigan, and he has resided in Michigan at all pertinent times.

5.     Defendant Garmin (headquartered in Olathe, Kansas) is an American multinational

---

[2] See

*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006)

[3] See

https://www.comparably.com/companies/garmin-international/diversity (as it appeared on February 12, 2020)

technology company that is into GPS navigation and wearable technology for diverse markets including automotive, aviation, marine, fitness, outdoor recreation, tracking, and mobile apps.

## Nature of Action

6.     This failure-to-hire action seeks redress for Defendant's violation of Plaintiff's rights under Title VII, ADEA, KADEA, and ADA.  Defendant Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's denial of Due Process to Plaintiff is also an issue in this action.

## Jurisdictional Basis

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626(b)-(c), and 29 U.S.C. § 216(b).

8.     This Court has subject matter jurisdiction (over Title VII, ADEA, KADEA, ADA, and Due Process claims) pursuant to 28 U.S.C. § 1332(a) as the amount in controversy is greater than $75,000, exclusive of interest and costs, and is between citizens of different states.

9.     This Court has supplemental jurisdiction over Jaiyeola's state law claim pursuant to 28 U.S.C. § 1367, as that claim arises out of the same operative facts as Jaiyeola's other claim and, together, they form part of the same case or controversy.

10.     Defendant Garmin is located within this district.   Accordingly, as the acts complained of herein took place within this District, the venue is proper in this district under 28 U.S.C. §1391.

11.     This Court has personal jurisdiction over the Defendant because it engages in

---

[4] See

*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006)

-3-

continuous and systematic business contacts within the State of Kansas and maintains a substantial physical presence in this State, including the operation of its corporate headquarters in Olathe, Kansas.

## Administrative remedies have been exhausted

12.     Jaiyeola incorporates by reference the above paragraphs as though set forth separately herein.

13.     Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the U.S. Equal Employment Opportunity Commission ("EEOC"), for Title VII, ADEA, and ADA Association Discrimination on November 26, 2019.  See Ex A.

14.     Jaiyeola filed another Charge of Discrimination (No. 41705-20) with the Kansas Human Rights Commission ("KHRC"), for Title VII, ADEA, KADEA, and ADA Association Discrimination on December 13, 2019.  See Ex B.

15.     EEOC issued Jaiyeola a Notice of his Right-to-Sue for Charge No. 563-2020-00499 on December 4, 2019.  See C.

16.     KHRC agreed with the determination of the EEOC.  See Ex D.

17.     This complaint has been filed within 90 days of Jaiyeola receiving EEOC's Notice of Right-to-Sue.

18.     Accordingly, Jaiyeola has met all the administrative prerequisites prior to filing this failure-to-hire action.

## Facts Common to All Counts

19.     Jaiyeola has the following educational qualifications: 1.) a 1979 B.Sc. in Chemistry (Biochemistry Minor) from the University of Ibadan, Nigeria; 2.) a 1985 Masters in Inorganic Chemistry (Bioinorganic) from the University of Ibadan, Nigeria; 3.) a 1991 Masters in Inorganic

Chemistry (Solid State Inorganic) from the University of Connecticut, Storrs; 4.) a 1995 Ph.D. in Materials Science from the University of Connecticut, Storrs; and 5.) a Masters in Business Administration (Major: Organization and Management, Minor: Marketing) from Syracuse University, Syracuse, New York. Since 1995, Jaiyeola has had extensive work experience in Materials Engineer positions with many companies including Element Materials Technology, Stryker, Boeing, Honeywell, and Carrier Corporation.

20. Jaiyeola saw an advertisement for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International on a Job Board (www.indeed.com) and he applied on July 3, 2019. See Ex E and Ex F.

21. Jaiyeola applied with his resume and cover letter. Jaiyeola's resume and cover letter indicate extensive Materials Engineering experience with a wide variety of metals including aluminum metals. See Ex G and Ex H.

22. Jaiyeola had Human Resources ("HR") phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019. See Ex I.

23. On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager). See Ex J.

24. On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas) from Mr. Evan Northup (Garmin's HR Coordinator). In the electronic mail invitation, one of the questions that Northup asked was the following: "What is your date of birth?". Jaiyeola replied and provided the following answer: "What is your date of birth?:                    `    See Ex K.

25. On August 5, 2019, Cormack sent Jaiyeola an "Assignment" for the on-site

-5-

interview at Garmin Headquarters in Olathe, Kansas. See Ex L. The "Assignment" topic:

> "Gold plating is required on a charge/data pin connection to reduce contact resistance.
> This is a wearable product, and therefore cannot employ nickel in the plating solution. The
> ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the
> event that the gold plating wears through or is otherwise compromised such that the
> underlying material is exposed. Propose an ideal process, material, and/or plating
> specification that would enable a reliable 100μin thick hardened gold layer to be plated
> onto SUS 316 pin."

26.     Jaiyeola did an on-site interview at Olathe, Kansas, on August 14, 2019.

27.     Jaiyeola first did HR interview with Cormack. During the interview Cormack made the following statements: "Jeff is John's boss. If Jeff doesn't like you, John will not hire you.". When Cormack interviewed Jaiyeola, she informed him of the nearby (to Olathe, Kansas) places to live and Jaiyeola informed her that he has a son (6 years old) who has Down Syndrome and that he would want to live in a school district that has facilities for Down Syndrome students. Cormack told Jaiyeola she has teachers in her family, and she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to Jaiyeola that interview day or the next (August 14 or 15, 2019). Jaiyeola never heard back from Cormack on that information.

28.     Next, Ms. Diane McLendon (Advanced Materials Engineer - Polymers) gave Jaiyeola a tour of Garmin facilities in Olathe. McLendon and Jaiyeola had technical discussions on the job requirements for the position during the tour. In particular, McLendon mentioned that the Engineering group had an urgent need for a suitable aluminum alloy, and Jaiyeola mentioned

his extensive experience with material selection of suitable aluminum alloys for different application environments.

29.     After the tour, Jaiyeola did technical interviews with 3 separate teams composed of Mudd, Mr. Jeff Minelli (Director of Mechanical Engineering), Garmin Mechanical Engineering Team Leaders, and Garmin Mechanical Engineering Managers. See Ex M.

30.     Mudd was part of the first technical interview team that Jaiyeola faced.  Others in this team included Minelli and Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive).  During the interview, Minelli repeatedly asked Jaiyeola the same question in exactly the same way about aluminum alloys.  Jaiyeola was very uncomfortable by the repetition of the question because Jaiyeola had to repeat his answers each time Minelli asked the same question.  Minelli didn't argue Jaiyeola's answers or indicated that he didn't understand Jaiyeola's answers.

31.     During Jaiyeola's technical interview with the second or third interview team, Mudd opened the door to the interview room, stood by the door (he didn't come inside), and informed Jaiyeola (to the hearing of the interviewing team) that he would not be at Jaiyeola's PowerPoint presentation.  Mudd did not give any reason why he wasn't going to be at the presentation and the discussion.  Jaiyeola was surprised and concerned that Mudd would not attend his presentation and discussion.  Jaiyeola was also concerned about the optics Mudd's announcement made to the technical team that was interviewing Jaiyeola at that instant.  The interviewing team heard what Mudd said.  Jaiyeola became very uncomfortable for the rest of the team interview and during Jaiyeola's subsequent PowerPoint presentation and discussion.

32.     Immediately after the technical interviews with the 3 teams, Jaiyeola did a PowerPoint presentation on the Garmin "Assignment" (part of the interview requirement) in a conference room and had a discussion on the "Assignment" with a group of Garmin Mechanical

Engineering Team Leaders, Garmin Mechanical Engineering Managers, Mechanical Engineers, and McLendon after the presentation. About 10 Engineers were present for the presentation and discussion. Cormack was not present.

33.     Mudd did not attend Jaiyeola's PowerPoint presentation on the Garmin "Assignment" and he did not participate in the discussion on the "Assignment". Therefore, Mudd did not have a complete and direct information to fairly decide on hiring Jaiyeola for the Garmin position.

34.     McLendon and one Garmin Engineer saw Jaiyeola to the door after the PowerPoint presentation and discussion. McLendon collected Jaiyeola's visitor's badge at the door.

35.     On August 15, 2019, Jaiyeola sent a "Thank You" electronic mail to Garmin. See Ex N.

36.     On August 22, 2019, Jaiyeola sent an "Update" request electronic mail to Cormack. On August 23, 2019, Cormack replied that "We are still considering you as a candidate, as we look at others as well. So, at this point, no decision has been made. I hope to know more next week!". Cormack never got back to Jaiyeola on Garmin's "decision". See Ex O.

37.     On November 13, 2019 (about 3 months after Jaiyeola's on-site job interview at Olathe), Jaiyeola received an electronic mail from Garmin (from Mr. Michael Risinger) stating that Jaiyeola was not hired for the position of Advanced Materials Engineer - Metals-19001CL at Garmin. Garmin's reasons were "Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview. Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible that in the future there may be other career opportunities that better match your qualifications.". See Ex P.

-8-

38.     On November 13, 2019 (the same day that Jaiyeola received the job denial electronic mail from Garmin), Jaiyeola visited the Garmin "Jobs" website and noticed that the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International that he interviewed for was still open.

39.     Jaiyeola read Garmin's Equal Employment Opportunity policy statement ("EEO Policy Statement"[5]) at Garmin's website. See Ex Q. The statement, signed by Mr. Cliff Pemble (Garmin's President and CEO), requested that EEO complaints should be directed to Ms. Laurie Minard (Garmin's Vice President of HR and "EEO Coordinator").

40.     On November 22, 2019, Jaiyeola followed the guidelines in Garmin's EEO statement and filed a complaint (copied to Cormack) with Mudd (See Ex R.) on Garmin's failure to hire him.

41.     On November 25, 2019, Jaiyeola again followed the guidelines in Garmin's EEO statement and made a phone call to the office Minard to complain about Garmin's job denial. Jaiyeola spoke with Minard's Executive Assistant. The Executive Assistant told Jaiyeola the following: 1.) Mudd notified Minard of Jaiyeola's complaint that morning (November 25, 2019), 2.) Jaiyeola should send his complaint to Garmin's Legal Department (to the attention of Mr. David Kight), and 3.) Jaiyeola should file his complaint with the Kansas EEOC office.

42.     On November 25, 2019, Jaiyeola filed a complaint with Minard (complaint was electronically mailed to Kight) on Garmin's failure to hire him. See Ex S.

43.     On November 26, 2019, Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the EEOC for Title VII, ADEA, and ADA Association Discrimination.

44.     On November 27, 2019, Jaiyeola received a reply to his complaint (dated

_____

[5] See

https://careers.garmin.com/en-US/

November 25, 2019) from Kight.  Kight gave the following Garmin reasons as to why Garmin did not hire Jaiyeola: "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position.".  Kight's reply did not indicate that Garmin did any investigation; as stated in Garmin's EEO statement.  See Ex Q.

45.   Minard, Garmin's EEO Coordinator, never contacted Jaiyeola.

46.   On December 13, 2019, Jaiyeola filed another Charge of Discrimination (No. 41705-20) with KHRC for Title VII, ADEA, KADEA, and ADA Association Discrimination.

47.   To date, Garmin has given two "inconsistent"[6] reasons (from Risinger and Kight - See Ex T.) for not hiring Jaiyeola.

48.   Upon information and belief, Garmin removed the job that Jaiyeola applied for from Garmin's career website on or after November 22, 2019 (the day that Jaiyeola filed a complaint with Mudd - See Ex R.).  Jaiyeola saw the job at the career site on November 13, 2019.

49.   Upon information and belief, the fact that Garmin pulled the advertisement for the position from the Garmin job site and the two inconsistent reasons given by Garmin constitute a pretext for not hiring Jaiyeola.

### COUNT I
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. Race, Color, and National Origin Discrimination

50.   Jaiyeola realleges and incorporates all preceding paragraphs.

51.   Garmin was an employer for the purposes of Title VII.

52.   Jaiyeola applied to Garmin for employment for the position of "Advanced Materials Engineer - Metals-19001CL".

53.   Jaiyeola was interviewed over the phone and on-site at Garmin Headquarters in

---

[6] *Fassbender v. Correct Care Solutions*, LLC, 890 F.3d 875 (2018)

Olathe, Kansas, by at least 12 Garmin employees (including a Director of Mechanical Engineering, Senior Engineering Managers, Engineering Managers, and Engineers).

54.     Upon information and belief, all the Garmin employees that interviewed Jaiyeola were White.

55.     Garmin has discriminated against Jaiyeola in violation of Title VII by subjecting him to different treatment on the basis of his Race (African American), Color (Black), and National Origin (Nigerian).  Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

56.     As a direct and proximate result of Garmin's intentional Race (African American), Color (Black), and National Origin (Nigerian) discrimination, Jaiyeola has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Garmin.

57.     The adverse failure-to-hire employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

58.     The Garmin employee who did not hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

59.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count I of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of 42 U.S.C.

§2000e, et seq.; for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C. §2000e-5(k) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.***
**Section 703(a) of Title VII**
**Race, Color, and National Origin Discrimination**
**Subordinate Bias Liability("cat's paw" theory of liability)[7]**

60.    Jaiyeola realleges and incorporates all preceding paragraphs.

61.    Garmin was an employer for the purposes of Title VII.

62.    Jaiyeola applied to Garmin for employment for the position of "Advanced Materials Engineer - Metals-19001CL".

63.    Jaiyeola had HR phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019.

64.    On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).   Both Garmin Managers remarked that Jaiyeola had highly pertinent qualifications and experience for the Garmin job under consideration.   They were particularly excited that Jaiyeola would be the eyes for Garmin U.S.A. at the Garmin manufacturing plant in Taipei, Taiwan.

65.    On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas).

66.    When Cormack interviewed Jaiyeola on-site at Olathe, Kansas, on August 14, 2019,

---

[7] See
*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*,
450 F. 3d 476 (10th Cir. 2006)

she again informed Jaiyeola that the Hiring Manager was Mudd and his boss was Mr. Jeff Minelli (Director of Mechanical Engineering) and she made the following statements: "Jeff is John's boss. If Jeff doesn't like you, John will not hire you.".

67.     Jaiyeola's first team technical interview team on August 14, 2019, was composed of Minelli, Mudd, and Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive). During the interview, Minelli repeatedly asked Jaiyeola the same question in exactly the same way about aluminum alloys. Jaiyeola was very uncomfortable by the repetition of the question because Jaiyeola had to repeat his answers each time Minelli asked the same question. Minelli didn't argue Jaiyeola's answers or indicated that he didn't understand Jaiyeola's answers.

68.     Jaiyeola had a technical interview with 3 technical teams on August 14, 2019. After the technical interview with the first team (Minelli, Mudd, and Zeller), Mudd informed Jaiyeola that he would not be present for Jaiyeola's PowerPoint presentation and discussion with the 3 technical teams and Garmin Engineers. Mudd gave Jaiyeola no reason for that decision. The PowerPoint presentation and discussion was an "Assignment" (a current Garmin Engineering issue for PowerPoint presentation and discussion with Garmin Engineers) that Cormack sent to Jaiyeola on August 5, 2019 as part of the requirements for the on-site interview at Garmin Headquarters. Cormack wrote: "The hiring team wanted me to send this your way so that you could be prepared to discuss this during your interview.". Jaiyeola prepared for the PowerPoint presentation and discussion for 9 days. Mudd was not present for Jaiyeola's PowerPoint presentation and discussion to the 3 technical teams and Garmin Engineers.

69.     Towards the end of Jaiyeola's PowerPoint presentation and discussion, Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive) made a comment that Jaiyeola's PowerPoint presentation was not on the topic that he was asked to present. Zeller's comment was not correct, and Mr. Aaron Lindh (Mechanical Engineering Manager – Outdoor Segment) quickly

corrected Zeller.  Jaiyeola was surprised by the Zeller comment.  Zeller was on the first technical team (Minelli, Mudd, and Zeller) that interviewed Jaiyeola earlier that day.

70.     Mudd did not hire Jaiyeola based on the influence of Minelli; who had a discriminatory motive.  Garmin should therefore be held liable for discrimination under Section 703(a) of Title VII of the Civil Rights Act of 1964 as it relates to subordinate bias liability.

71.     Garmin has discriminated against Jaiyeola in violation of Title VII by subjecting him to different treatment on the basis of his Race (African American), Color (Black), and National Origin (Nigerian).  Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

72.     As a direct and proximate result of Garmin's intentional Race (African American), Color (Black), and National Origin (Nigerian) discrimination, Jaiyeola has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Garmin.

73.     The adverse failure-to-hire employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

74.     The Garmin employee who did not hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

75.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable (subordinate bias liability) for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count II of his Complaint,

-14-

for a finding that he has been subjected to unlawful discrimination in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964 (subordinate bias liability); for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C. §2000e-5(k) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

### COUNT III
### Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* ("ADEA")
### Age Discrimination

76.     Jaiyeola realleges and incorporates all preceding paragraphs.

77.     Garmin was an employer for the purposes of ADEA.

78.     Garmin requested (through an electronic mail dated July 26, 2019) for Jaiyeola's date of birth when Garmin was scheduling Jaiyeola for the on-site interview (on August 14, 2019) at Olathe, Kansas, and Jaiyeola provided his date of birth to Garmin.

79.     Jaiyeola was at least 64 years old when he applied and interviewed for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

80.     Jaiyeola is within the class of persons protected by 29 U.S.C. 621, *et seq.*.

81.     At all times material, Jaiyeola is entitled to the rights and protections provided under the ADEA.

82.     Garmin discriminated against Jaiyeola on the basis of his age in violation of the ADEA.

83.     Garmin, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of Jaiyeola based upon Jaiyeola's age, ultimately not hiring Jaiyeola.

-15-

84.     The materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

85.     Garmin's treatment of Jaiyeola was done with malice and reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count III of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of the ADEA; for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 29 U.S.C. §§262(b) and 216(b) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

## COUNT IV
### Violation of the Kansas Age Discrimination in Employment Act (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act. ("KADEA")
### Age Discrimination

86.     Jaiyeola realleges and incorporates all preceding paragraphs.

87.     Garmin was an employer in the State of Kansas for the purposes of KADEA.

88.     The KADEA prohibits an employer from discriminating on the basis of age.

89.     Garmin requested (through an electronic mail dated July 26, 2019) for Jaiyeola's date of birth when Garmin was scheduling Jaiyeola for the on-site interview (on August 14, 2019) at Olathe, Kansas, and Jaiyeola provided his date of birth to Garmin.

90.     Jaiyeola was at least 64 years old when he applied and interviewed for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

91.     Jaiyeola is within the class of persons protected by KADEA.

-16-

92.     At all times material, Jaiyeola is entitled to the rights and protections provided under the KADEA.

93.     Garmin discriminated against Jaiyeola on the basis of his age in violation of the KADEA.

94.     Garmin, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of Jaiyeola based upon Jaiyeola's age, ultimately not hiring Jaiyeola.

95.     The materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

96.     Garmin's treatment of Jaiyeola was done with malice and reckless indifference to Jaiyeola's KADEA protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count IV of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of the KADEA; for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by KADEA (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

**COUNT V**
**Violation of Title I of the Americans with Disabilities Act ("ADA"),**
**42 U.S.C. §12112(b)(4)**
**Disability Association Discrimination**

97.     Jaiyeola realleges and incorporates all preceding paragraphs.

98.     Garmin was an employer for purposes of the ADA.

99.     Jaiyeola has a 6-year-old son who has Down Syndrome and therefore classified as disabled for purposes of the ADA.

100.    Jaiyeola's son has a record of being disabled for purposes of the ADA.

101.    When Cormack interviewed Jaiyeola on August 14, 2019, she informed him of the nearby (to Olathe, Kansas) places to live and Jaiyeola informed her that he has a son (6 years old) who has Down Syndrome and that he would want to live in a school district that has facilities for Down Syndrome students.  Cormack told Jaiyeola she has teachers in her family, and she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to Jaiyeola that interview day or the next (August 14 or 15, 2019). Jaiyeola never heard back from Cormack on that information.

102.    The failure-to-hire adverse employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

103.    The person who failed to hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

104.    Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

105.    Garmin has discriminated against Jaiyeola in violation of ADA by subjecting him to different treatment on the basis of his son's Down Syndrome disability.  Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

        WHEREFORE, Jaiyeola prays for judgment against Garmin on Count V of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of 42

U.S.C. §12112(b)(4) (Disability Association Discrimination); for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C. §2000e-5(k) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

## COUNT VI
### Deprivation of Due Process Under the Fourteenth Amendment, 42 U.S.C. § 1983

106.    Jaiyeola realleges and incorporates all preceding paragraphs.

107.    Jaiyeola saw an advertisement for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International on a Job Board (www.indeed.com) and he applied on July 3, 2019.

108.    Jaiyeola had HR phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019. Cormack informed Jaiyeola that the Hiring Manager for the position was Mr. John Mudd.

109.    On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).

110.    On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas) from Mr. Evan Northup (Garmin HR Coordinator) to occur August 14, 2019.

111.    On August 5, 2019, Cormack sent Jaiyeola an "Assignment" (a PowerPoint presentation and a discussion of the presentation with Garmin Engineers) for the on-site interview at Garmin Headquarters in Olathe, Kansas.

112.    During Jaiyeola's technical interview with the second or third interview team, Mudd

-19-

opened the door to the interview room, stood by the door (he didn't come inside), and informed Jaiyeola (to the hearing of the interviewing team) that he would not be at Jaiyeola's PowerPoint presentation and discussion. Mudd did not give any reason why he wasn't going to be at the presentation and the discussion. Jaiyeola was surprised and concerned that Mudd would not attend his presentation and discussion. Jaiyeola was also concerned about the optics Mudd's announcement made to the technical team that was interviewing Jaiyeola at that instant. The interviewing team heard what Mudd said. Jaiyeola became very uncomfortable and embarrassed for the rest of the team interview and during Jaiyeola's subsequent PowerPoint presentation and discussion.

113. Mudd did not attend Jaiyeola's PowerPoint presentation and discussion.

114. Jaiyeola's PowerPoint presentation and discussion were part of the on-site interview requirements for the job that Jaiyeola applied for.

115. Mudd did not have all of the necessary information to make an informed decision about hiring Jaiyeola for the position Jaiyeola applied for because Mudd did not attend Jaiyeola's PowerPoint presentation and discussion.

116. Mudd's decision not to hire Jaiyeola constituted a denial of due process to Jaiyeola because his decision was based on less than complete information[8].

117. That materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation embarrassment, and frustration.

118. Garmin's action against Jaiyeola was done with malice and reckless indifference to Jaiyeola's Federally protected rights under the Constitution. Garmin is therefore liable for punitive

---

[8] See

*Blackford v. Kansas Employment SEC. Bd. of Review*, 938 F. Supp. 739 (D. Kan. 1996)

damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count VI of his Complaint, for a finding that he has been denied due process in violation of 42 U.S.C. § 1983 (Deprivation of Due Process); for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

### Jury Demand and Place of Trial

Jaiyeola respectfully requests a trial by jury on all issues so triable in Kansas City, Kansas.

### Designation of Place of Trial

Jaiyeola respectfully requests that trial in this matter be held at the Robert J. Dole Courthouse, 500 State Avenue, Kansas City, Kansas 66101.

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Drive SE
Apartment 6
Grand Rapids, Michigan 49548
Tel.:  616.635.4025
ganiyu.jaiyeola@gmail.com
*pro se*

PLAINTIFF

-21-