IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA, )
)
        Plaintiff, )
)
v. )   Case No.  2:20-cv-2068-JWB-JPO
)
GARMIN INTERNATIONAL, INC. )
)
        Defendant. )
_____)

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant's motion to dismiss counts II and VI of Plaintiff's complaint. (Doc. 10.)  The motion has been fully briefed and is ripe for decision. (Docs. 11, 12, 13.)  Defendant's motion is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.**    **Facts**

The following facts are taken from the allegations in Plaintiff's complaint.[1]  Plaintiff Ganiyu Jaiyeola applied and interviewed for an Advanced Materials Engineer position with Defendant, Garmin International, Inc., in July and August of 2019.  On July 23, 2019, Plaintiff was interviewed via phone by Michelle Cormack, Defendant's Senior Technical Recruiter.  Two days later, Plaintiff was interviewed over the phone by John Mudd, Defendant's Mechanical Engineering Hiring Manager, and another employee.  Plaintiff was then invited to conduct an on-site interview and given an assignment to be completed before, and discussed at, his interview.

---

[1] Because not all allegations are relevant to the motion to dismiss specific counts of the complaint, they are not included in this recitation.

Plaintiff interviewed at Defendant's headquarters in Olathe, Kansas on August 14, 2019. Plaintiff again interviewed with Cormack. During the in-person interview, Cormack told Plaintiff that Jeff Minelli was John Mudd's boss, and that "[i]f Jeff doesn't like you, John will not hire you." (Doc. 1 at ¶ 27.) Plaintiff was given a tour of the facilities and began a series of technical interviews.

The first technical interview was conducted by Minelli, Mudd, and another employee. In the interview, "Minelli repeatedly asked [Plaintiff] the same question in exactly the same way about aluminum alloys" causing Plaintiff to have to repeat his answers. (Doc. 1 at ¶ 30.) Plaintiff states that he was made very uncomfortable by the repetition of the questions, as Minelli did not argue with Plaintiff's answer or indicate that he did not understand Plaintiff's answers. During the second technical interview, conducted by a different set of employees, Mudd opened the door and informed Plaintiff that he would not be attending his presentation over his assignment. (Doc. 1 at ¶ 31.) Mudd did not provide Plaintiff with a reason why he would not be in attendance. Plaintiff concluded his on-site interview with a third and final technical interview and his presentation, at which Mudd was not present.

On August 15, 2019, Plaintiff followed up with thank-you emails. A week later Plaintiff requested an update, to which he received a response from Cormack, indicating that he was still a candidate for the position. On November 13, 2019, Plaintiff received an email from Mr. Michael Risinger informing him that he was not being hired for the position, stating:

> Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview. Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible in the future there may be other career opportunities that better match your qualifications.

(Doc. 1 at ¶ 37.) After receiving this email Plaintiff checked Defendant's job website which listed the position that he interviewed for as still open.

On November 22, 2019, following the guidelines of Defendant's Equal Employment Opportunity policy statement which was set forth online, Plaintiff filed a complaint with Mudd and copied to Cormack concerning Garmin's failure to hire him. (Doc. 1 at ¶ 40.) On November 25, 2019, Laurie Minard, Defendant's Vice President of Human Resources and EEO Coordinator was notified of the complaint. Minard's executive assistant instructed Plaintiff to send his complaint to Defendant's legal department and file it with the Kansas EEOC office, which Plaintiff did on November 26, 2019.

On November 27, 2019, Defendant's legal department responded to Plaintiff's complaint, providing a different reason as to why he was not hired, stating: "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position." (Doc. 1 at ¶ 44.)

On November 26, 2019, Plaintiff filed his claim with the EEOC, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the ADEA, and the ADA. (Doc. 1 at ¶ 43.) Additionally, Plaintiff filed charges of discrimination with the Kansas Human Rights Commission alleging violations of Title VII, the ADEA, the KADEA, and the ADA on December 13, 2019. (Doc. 1 at ¶ 46.)

Plaintiff filed this complaint against Defendant on February 19, 2020, after receiving his right to sue letter from the EEOC. Plaintiff now asserts the following claims: Violation of Title VII via discrimination based on race, color, and national origin; violation of Title VII via discrimination based on race, color, and national origin based on subordinate bias liability; age discrimination in violation of the ADEA; age discrimination in violation of the KADEA; disability

association discrimination in violation of the ADA; and deprivation of due process under the Fourteenth Amendment. (Doc. 1.) Defendant moves to dismiss count II and VI of Plaintiff's complaint. (Doc. 10.)

## II.  Motion to Dismiss Standards

To survive a motion to dismiss a complaint must allege enough well-pleaded facts to raise a facially plausible claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must view all well-pleaded facts, and the reasonable inferences drawn therefrom, in the light most favorable to the plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The court, however, will not consider bare assertions or legal conclusions when determining if a complaint is plausible. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Because Plaintiff is proceeding pro se, the court is required to construe his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Construing Plaintiff's pleadings liberally requires that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court, however, will not supply Plaintiff with additional factual allegations or construct legal theories on his behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## III.  Analysis

### A.  Violation of Title VII Based on Subordinate Bias Liability

Defendant contends that count II of Plaintiff's complaint is redundant of count I and should be dismissed. (Doc. 11 at 3.) The only difference between the two counts is the theory of recovery on which Plaintiff relies. In count I, Plaintiff alleges Defendant violated Title VII in failing to hire him because of his race, color, or national origin. (Doc. 1 at ¶ 55.) In count II, Plaintiff alleges the same injury, but bases it on a "cat's paw liability" theory of recovery.[2] (Doc. 1 at ¶ 70.) This theory of recovery is used when a plaintiff seeks to hold an "employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Bird v. Regents of New Mexico State Univ.*, 619 F. App'x 733, 756 (10th Cir. 2015) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011)).

Defendant is correct in asserting that a theory of recovery, such as cat's paw liability, is not a cause of action. However, Defendant incorrectly conflates a count and a cause of action. Though plaintiffs are required, for the promotion of clarity, to set out claims founded on separate transactions or occurrences in separate counts, this does not mean that every count must contain a separate cause of action. *See* Fed. R. Civ. P. 10(b); *see also* Fed. R. Civ. P. 8(d)(2). The Federal Rules of Civil Procedure also affords plaintiffs the opportunity to plead alternative theories of recovery "either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). The reading of these rules together suggests that the purpose of organizing a complaint into separate counts is to place defendants on notice as to exactly what they are defending against, whether an entirely separate cause of action or alternative theories of recovery. *See Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp.3d 1150, 1174 (D. Kan. 2017) (plaintiff may plead two counts as alternative or even inconsistent legal theories under Rule 8(d)).

---

[2] Defendant's motion is limited in that it only seeks dismissal on the basis of redundancy. (Docs. 11 at 3-4; 13 at 2.) Defendant does not assert that Plaintiff's allegations fail to state a claim under the cat's paw liability theory; therefore, the court's ruling is limited to whether Plaintiff's claim should be dismissed for redundancy and the court has not evaluated the claim on the merits.

Because Plaintiff may plead alternative theories as two counts, counts I and II of the complaint are not redundant). *Id.* Accordingly, Defendant's motion to dismiss count II of the complaint for redundancy is denied.

### B. Count VI: Denial of Due Process

Plaintiff contends that he was denied due process in violation of 42 U.S.C. § 1983 when Mudd made his decision not to hire Plaintiff based off incomplete information. To prevail on a Section 1983 claim, Plaintiff must show that a right secured under the Constitution and laws of the United States was violated by a person acting under color of state law. *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002). "Thus, the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *NCAA v. Tankanian*, 488 U.S. 179, 191 (1988)).

There are numerous ways to establish that the conduct of a private entity constitutes state action, however, the complaint is void of any facts to suggest that Defendant is a state actor, and Plaintiff fails as a matter of law to state a valid Section 1983 claim. In his response, Plaintiff asserts new facts attempting to establish that a symbiotic relationship exists between the City of Olathe and Defendant. (Doc. 12 at 21.) However, even if Plaintiff properly pleaded such facts in his complaint, he still would fail to establish a symbiotic relationship. A symbiotic relationship only exists when "[t]he State has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity …." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961). Doing this requires that "the private and public actors have sufficiently commingled their responsibilities." *Wittner v. Banner*

-7-

*Health*, 720 F.3d 770, 778 (10th Cir. 2013).  Plaintiff suggests that in granting Defendant industrial revenue bonds and other tax incentives, the Olathe City Council has effectively created this type of relationship.  (Doc. 12 at 20.)  This assertion is incorrect.  The Tenth Circuit has held that "payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity." *Gallagher*, 49 F.3d at 1453.

In his complaint, or otherwise, Plaintiff fails to show that Defendant is acting under the color of state law, and his Section 1983 claim fails as a matter of law.

**IV.   Conclusion**

Defendant's motion to dismiss count II of Plaintiff's complaint is DENIED; Defendant's motion to dismiss count VI of Plaintiff's complaint is GRANTED.

IT IS SO ORDERED this 12th day of August, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE