UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,                          )
                                                 )
                        Plaintiff,               )
                                                 )
v.                                               )   Case No. 20-2068-HLT
                                                 )
GARMIN INTERNATIONAL, INC.,                      )
                                                 )
                        Defendant.               )

**<u>ORDER</u>**

Plaintiff, Ganiyu Ayinla Jaiyeola, has filed a motion to compel (ECF No. 63) discovery responses from the defendant, Garmin International, Inc. Defendant opposes the motion, asserting the documents are protected by both attorney-client privilege and work-product protection. For the reasons discussed below, the court respectfully denies plaintiff's motion.

<u>Background</u>

Plaintiff interviewed for a position with defendant in 2019. John Mudd (whose title is Mechanical Engineering Senior Manager) and Jared Klein (Mechanical Engineer Manager) conducted a phone interview with plaintiff on July 25, 2019, and an on-site interview on August 14, 2019.[1] Plaintiff received an e-mail notifying him he didn't get the job on November 13, 2019.[2] On November 22, 2019, plaintiff e-mailed Mudd and copied

---

[1] ECF No. 64 at 10, 12.

[2] *Id.* at 14.

Michelle Cormack (Senior Tech Recruiter) to "complain that [he] was not hired."[3]  In that correspondence and in the briefing of this motion, plaintiff uses the phrase "filed a complaint," citing defendant's Equal Employment Opportunity policy statement.[4]  Plaintiff filed another complaint with defendant's human resources director on November 25,[5] then filed an EEOC complaint on November 26.[6]

On February 19, 2020, plaintiff filed his complaint in this court, alleging discrimination claims for defendant's failure to hire plaintiff.[7]  The former presiding U.S. District Judge, John W. Broomes, dismissed the 42 U.S.C. § 1983 due-process claim on August 12; the Title VII claims for race, age, and disability discrimination remain pending.[8] On October 6, plaintiff served his first set of discovery requests to defendant.[9]  Defendant represents it served responses on November 20,[10] though there is no docket entry reflecting service.  Defendant served its supplemental answers and objections on December 14.[11]  It

---

[3] *Id.* at 7.

[4] ECF No. 96 at 6-7.

[5] ECF No. 64 at 15.

[6] *Id.* at 16.

[7] ECF No. 1.

[8] ECF No. 17.

[9] ECF No. 20.

[10] ECF No. 85 at 1.

[11] ECF No. 50.

served a copy of its privilege log the same day and served a copy of its supplemental privilege log on January 4, 2021.[12]

As a threshold matter, the court first considers whether the parties have sufficiently conferred, as required by D. Kan. R. 37.2.  The parties represent they've conferred over these issues via phone and e-mail multiple times.[13] As such, the court is satisfied counsel have adequately conferred for the purposes of the motion.

Analysis

Plaintiff moves to compel six documents, all of which defendant contends are protected by attorney-client privilege and/or work-product protection.

The Tenth Circuit defines attorney-client privilege as follows:

> The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.  The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather, the communication between a lawyer and client must relate to legal advice or strategy sought by the client.[14]

---

[12] ECF No. 85 at 1-2.

[13] ECF No. 85-2.

[14] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 1753958, at *2 (D. Kan. Apr. 19, 2019) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)).  Kansas state law defines attorney-client privilege nearly identically. "[C]ommunications found by the judge to have been between an attorney and such attorney's client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege: (1) If such client is the witness, to refuse to disclose any such communication; (2) to prevent such client's attorney from disclosing it; and (3) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the

The privilege doesn't apply to every interaction between attorney and client.[15] There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client privilege to shield the communication from disclosure.[16] Legal advice must predominate for the communication to be protected, i.e., the privilege does not apply where the legal advice is merely incidental to business advice.[17] Parties may have different roles with regard to protected communications.[18] Communications must be within the scope of the employees' corporate duties to retain the privilege.[19]

The work-product doctrine prevents disclosure of information that was prepared in anticipation of litigation or for trial.[20] This requires more than a mere possibility of litigation.[21] Defendant, as the party asserting the privilege, has the burden of establishing

---

attorney, (ii) in a manner not reasonably to be anticipated by the client, or (iii) as a result of a breach of the attorney-client relationship." Kan. Stat. Ann. § 60-426(c)(3).

[15] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 690 (Kan. 2000).

[16] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 (D. Kan. 2008).

[17] *Id.*

[18] *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993).

[19] *Shriver v. Baskin-Robbins Ice Cream Co., Inc.*, 145 F.R.D. 112, 114 (D. Col. 1992).

[20] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184–85 (10th Cir. 2010).

[21] *Better v. YRC Worldwide Inc.*, No. 11-2072-KHV, 2015 WL 11142863, at *4 (D. Kan. Sept. 23, 2015).

its application to each document.[22]  It must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[23]  The court evaluates both whether the documents in question were created *because* of the anticipation of litigation and whether the party reasonably believed the threat of litigation to be real and imminent.  Generally, documents created "in the ordinary course of business or for other non-litigation purposes are not protected" under the work-product privilege.[24]

All of the documents at issue were created on or after November 22, 2019.  Plaintiff uses that date (when he sent his first e-mail to defendant) to argue only the people on that e-mail should be involved in the subsequent communications, and they shouldn't have forwarded the e-mail to in-house counsel.  He argues documents created before November 26, when he filed his EEOC claim, couldn't have been prepared in anticipation of litigation.[25]

But defendant represents that the November 22 e-mail was, for its purposes, construed as a legal complaint alleging discrimination.  In that e-mail, plaintiff repeatedly used the term "complaint;" he asserted he wasn't hired because of his race, age, and his son's disability; and he asked for defendant to forward the complaint to the "EEOC

---

[22] *Id.*

[23] Fed. R. Civ. P. 26(b)(3); *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013).

[24] *Kannaday v. Ball*, 292 F.R.D. at 648.

[25] ECF No. 96 at 9.

department."[26]  Plaintiff clarifies in the briefing that the references were actually intended to be "EEO."[27]  That complaint was forwarded to the human resources department and the legal department the same day.[28]  Defendant contends its counsel reasonably anticipated litigation after reviewing the complaint, and its associate general counsel, David Kight, then directed the company to conduct an investigation into plaintiff's allegations. Specifically, Kight instructed the people involved in plaintiff's hiring decision to gather and provide information for Kight to provide legal advice to the company.[29]   It's defendant's position that the resulting communications were created as a result of this investigation and are protected by the claimed privileges.

E-Mails

Plaintiff moves to compel four e-mails.  He argues when he filed his initial internal complaints, "there was no indication of an attorney being involved."[30]  Accordingly, he argues follow-up e-mails among defendant's employees don't involve the threat of litigation; rather, they were sent in the regular course of business.[31]

---

[26] ECF No. 64 at 18; ECF No. 85 at 2.

[27] ECF No. 96 at 9.  Separately, plaintiff makes unnecessary comments regarding Kight's competence at his job and insinuates Kight has been untruthful in his declaration.  *Id.* at 13.  The court finds no support for these allegations.

[28] ECF No. 85 at 2.

[29] *Id.* at 2-3.

[30] ECF No. 64 at 17.

[31] *Id.*

Defendant has included all of these e-mails on its privilege log. As the party asserting privilege, it must make a clear showing and describe in detail the documents to be protected. Under Fed. R. Civ. P. 26(b)(5), a party asserting attorney-client privilege or work-product protection should "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The objecting party must provide sufficient information to determine whether each element of the asserted objection is satisfied.[32]

CTRL000000111-2/GARMIN 000903

This is an e-mail from Michelle Cormack to defendant's legal counsel and members of management on November 22, 2019.[33] Plaintiff cites the BATES numbers separately, but defendant contends the BATES numbers for these two documents reflect the same e-mail.[34] Defendant states the partial redaction involves discussions about plaintiff's complaint, specifically, "communication with David Kight for purpose of providing legal advice regarding plaintiff's complaint of unlawful discrimination."[35] Plaintiff argues the e-mail contains notes from plaintiff's interview and isn't privileged because it was sent to non-attorneys.

---

[32] *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 615 (D. Kan. 2014).

[33] ECF No. 85 at 9.

[34] *Id.*

[35] ECF No. 85-2 at 4.

The court agrees with defendant this e-mail is covered by attorney-client privilege, as Cormack sent to the complaint to legal counsel for the purpose of obtaining his legal advice.  Plaintiff himself notes November 22 is the day he sent an e-mail to John Mudd to complain he wasn't hired.[36]  Correspondence directly after that among the employees involved in the interview, as well as the company's in-house counsel, reasonably arose after plaintiff sent the e-mail to Mudd.  To the extent plaintiff is arguing Kight was included on the e-mail *only* to make the privilege argument, the court disagrees.  A job applicant sending an e-mail to management to allege he wasn't hired because of discrimination would reasonably lead to in-house counsel getting involved.  Further, the court isn't persuaded by plaintiff's distinction between "EEOC" and "EEO."[37]  The court accepts plaintiff's clarification that the reference should have been to defendant's EEO department, which is not the same as the EEOC.  The conclusion still stands.  Despite plaintiff's assertion he hadn't yet threatened litigation on November 22, the record supports defendant's assertion that it reasonably anticipated litigation at that point.

Plaintiff argues, in the alternative, the e-mail could be produced pursuant to the protective order, entered on November 9, 2020.[38]  The court rejects this proposal, as the

---

[36] ECF No. 64 at 7.

[37] ECF No. 96 at 9.

[38] ECF No. 40.

protective order is meant to protect confidential information, not require the disclosure of privileged information.[39]

<u>CTRL00000160-1 – 162-3</u>

This is an e-mail and attachments from Klein, created on November 22, 2019, related to defendant's investigation of plaintiff's discrimination complaint. Defendant represents that the attachments, identified by plaintiff as CTRL00000161 – 162-3,[40] are notes from the interview process that it's already produced; plaintiff has, in fact, attached them as exhibits to his memorandum in support of the motion to compel.[41] At issue is CTRL00000160-1, the cover e-mail from Klein to Mudd. The privilege log notes this e-mail "reflects communication and notes regarding plaintiff's on-site interview that were compiled pursuant to Garmin's investigation of plaintiff's complaint of unlawful discrimination per the direction of David Kight."[42]

Plaintiff argues this e-mail isn't privileged because Klein isn't an attorney. Plaintiff repeatedly cites November 22, 2019 as the day he sent an e-mail to Mudd to complain he wasn't hired, and he notes he didn't send the e-mail to Klein.[43] But the relevant standard

---

[39] *See id.* at  ¶ 18.

[40] Defendant references these attachments as CTRL00000161 – 163-2. *See* ECF No. 85 at 10.

[41] *Id.*, citing ECF No. 64, Exs. E & G.

[42] ECF No. 85-2 at 5.

[43] ECF No. 64 at 9-10.

isn't who *plaintiff* communicated with in his e-mail.  The privilege standards involve what *defendant* did with its documents.

E-mails among non-attorneys may still be privileged.  The notes to Fed. R. Civ. P. 26(b)(3) and subsequent case law are clear that "agents of a party or its representative, who stand in the legal shoes of the party, are entitled to the same work-product protections as the party itself."[44]  Similarly, the attorney-client privilege extends to communications made within a corporation if they're for the purpose of securing legal advice.[45]  That specifically applies to communications between non-attorneys.[46]

Here, Klein and Mudd are in management; they communicated pursuant to the internal investigation of plaintiff's complaint, at Kight's direction.[47]  Mudd forwarded this e-mail to Kight.[48]  The e-mail was labeled "Privileged and Confidential," which, while not dispositive, supports the conclusion that the e-mail was prepared as part of the investigation.[49]  The court finds this e-mail is protected by attorney-client privilege.

---

[44] *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 616–17 (D. Kan. 2014).

[45] *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638 (D. Kan. 2006).

[46] *Id.* at 639 (D. Kan. 2006) (finding documents exchanged among human resources personnel were privileged because they were made "for the purpose of channeling pertinent information to counsel for assessment").

[47] ECF No. 85 at 11.

[48] *Id.*

[49] *Id.*

CTRL00000168-1 – 168-3

This is an e-mail dated November 24, 2019 from John Mudd to in-house counsel and other Garmin employees.  Again, defendant represents it has produced the attachments to this e-mail at GARMIN 000107-129, 426, 440, and 562, so what's at issue is a single e-mail.[50]   The privilege log notes this e-mail "reflects communication with David Kight regarding plaintiff's on-site interview relating to Garmin's investigation of plaintiff's complaint of unlawful discrimination per the direction of David Kight."[51]

Plaintiff argues attorney-client privilege doesn't apply merely because an attorney was copied on the e-mail.[52]   There is no support for the argument that Kight was inappropriately attached to the e-mail so that defendant could claim it was privileged. Defendant argues, and the court again agrees, this e-mail and attachments are protected by attorney-client privilege because they're direct communications with in-house counsel relating to defendant's investigation of plaintiff's complaint.

CTRL00000125-1

This is an e-mail from November 25, 2019, from John Mudd to in-house counsel and other employees, as well as a response from the human resources director, Lynnette Huscher, on November 26.[53]   Plaintiff again argues this e-mail isn't privileged just because

---

[50] *Id.* at 12.

[51] ECF No. 85-2 at 6.

[52] ECF No. 64 at 11-12.

[53] ECF No. 85 at 12.

counsel was copied.[54]   The privilege log notes this e-mail "reflects communication with David Kight regarding Garmin's investigation into plaintiff's complaint of unlawful discrimination."[55]   Further, defendant points out plaintiff sent a second e-mail on November 25 to in-house counsel where he referred to the communication as an "EEOC complaint,"[56] which corroborated defendant's anticipation of litigation.   For the same reasons as above, the court agrees with defendant that this is a privileged communication with in-house counsel relating to the company's investigation of plaintiff's complaint.

GARMIN 000440

This is a compilation of interview notes from Benjamin Dobbs on August 14, 2019, related to plaintiff's application for employment.[57]   Dobbs is a senior mechanical engineer who participated in plaintiff's on-site interview.[58]   Dobbs added to his file another document on November 22, 2019, which is also part of GARMIN 000440.[59]   Defendant represents it has produced all of Dobbs's interview notes made before November 22, and the only redaction to this document reflects "communication to defendant's legal counsel

_____

[54] ECF No. 64 at 13.

[55] ECF No. 85-2 at 8.

[56] ECF No. 85 at 13.

[57] *Id.* at 7.

[58] *Id.*

[59] ECF No. 63 at 4.

that was advising defendant in relation to its response to plaintiff's assertions of unlawful conduct."[60]

Plaintiff contends the additional record created in November should be a new record.[61]  For this record, he argues it isn't privileged because it falls under the crime-fraud exception. Specifically, plaintiff argues the redacted portion of this document includes "facts created to alter facts; a fraud."[62]  He seeks sanctions for the creation of that document, alleging defense counsel directed Dobbs to create the second document, which constituted fraud.[63]

Under Kansas and federal law, the attorney-client privilege doesn't extend when the client consults an attorney to enable or aid a crime or fraud.[64]  To meet that standard, the moving party must present prima facie evidence that the allegation has some foundation in fact, i.e. a showing that's "adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the

---

[60] ECF No. 85 at 7; ECF No. 85-2 at 4.

[61] ECF No. 64 at 5.

[62] *Id.* at 6.

[63] ECF No. 63 at 4.

[64] K.S.A. 60–426(b)(1); *Berroth v. Kansas Farm Bureau Mut. Ins. Co.*, 205 F.R.D. 586, 589–90 (D. Kan. 2002).

crime-fraud exception applies."[65]  The court has discretion to determine whether the party has established a prima facie case. [66]

Plaintiff hasn't demonstrated that a prima facie case for actionable fraud exists. Beyond using the word "fraud," plaintiff doesn't acknowledge the elements of fraud, which include, under Kansas law, "an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or reckless made with a disregard for the truth, where another party *justifiably relies* on the statement and acts to his injury."[67]  Adding a supplemental record to plaintiff's file a few months later doesn't constitute fraud.  Plaintiff hasn't alleged the elements necessary to invoke the crime-fraud exception.  Accordingly, the court also denies plaintiff's request to sanction defendant and Kight for the addition of the November 22, 2019 entry to plaintiff's file.

The notes added on November 22, 2019 to GARMIN 000440 are protected by attorney-client privilege and work-product protection.  These are interview notes added by defendant's representative after plaintiff filed a complaint and after defendant reasonably anticipated litigation.  It's reasonable that additional notes would be added to plaintiff's file after the interview because they involve the same candidate.  The court denies plaintiff's motion to compel the redacted portion of this file.

---

[65] *Berroth v. Kansas Farm Bureau Mut. Ins. Co.*, 205 F.R.D. 586, 589–90 (D. Kan. 2002) (discussing the standard in other circuits as to what constitutes a prima facie case).

[66] *Id.*

[67] *Id.*

<u>*In Camera* Review</u>

Plaintiff seeks *in camera* review of the relevant documents, arguing it'll "reveal the nature of the documents."[68]   The decision whether to review documents *in camera* rests within the trial court's discretion.[69]   The court must have some grounds for conducting the review, which may be useful when there's a genuine dispute between the parties as to the accuracy of the withholding party's description of the documents.[70]   Notably, though, such review is not to be routinely undertaken.[71]

Based on a review of the briefing, the court declines to require *in camera* review here.  Defendant's privilege log sufficiently describes the documents at issue, and the court doesn't find a reason to exercise its discretion to require review.  As discussed above, the court finds plaintiff hasn't shown that these documents aren't privileged.  There is no dispute about the accuracy of the privilege log, merely whether the privileges apply. Therefore, there are no grounds to conduct an *in camera* review.

<u>Plaintiff's Litigation Tactics</u>

As litigation progresses, the court will take this opportunity to address several of plaintiff's practices.  First, the court points to plaintiff's use of a lengthy narrative in many of his filings.  For example, in nearly every motion, supporting memorandum, and reply,

---

[68] ECF No. 96 at 22.

[69] *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 621 (D. Kan. 2014).

[70] *Id.*

[71] *Id.*

plaintiff includes a multi-page recitation of his factual narrative of the case.  The court appreciates plaintiff's efforts to provide context.  But the relevant facts are already in the record; there is no need to regularly repeat them at this point.  Going forward, plaintiff should make a good-faith effort to trim his filings down to only the essential facts and arguments for that particular issue.

Second, the court directs plaintiff to be mindful not to use language from other cases to assert this court has made a ruling when it hasn't.  One illustrative example comes from plaintiff's reply, where he says, in quotations:

> "The Court determines that **Plaintiff's [letters to Mudd and Minard] [were] … taken in the ordinary course of business**. [*Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 498 (D. Kan. 1997).  (**'[E]ven if there is a general prospect of litigation, a document is not protected by work-product immunity if the document was prepared merely in the regular course of business.'**).]."[72]

Plaintiff is entitled to make good-faith arguments with the case law he deems applicable.  To be clear, plaintiff appropriately credits other cases, and the court doesn't believe he is intentionally misrepresenting his case citations.  But instead of conflating plaintiff's arguments with this court's rulings (i.e. concluding the court has determined something when it hasn't), plaintiff should keep his own arguments separate from the quotes he includes.  So, in the example above, the court may cite language from *Burton v. R.J. Reynolds*.  But this court hasn't made the determination plaintiff quotes.  Using

---

[72] ECF No. 96 at 14 (emphasis in original).

quotation marks inaccurately suggests the language is case law.  Plaintiff should take good care to keep actual case law distinct from his own arguments.

Finally, the court warns plaintiff about the impropriety of antagonistic comments directed toward defense counsel.  The record reflects correspondence between the parties where plaintiff mentioned filing an ethics complaint against defense counsel and insinuated she would be disbarred.[73]  The court is not aware of any behavior of defense counsel even coming close to meeting this standard and will not tolerate threats or unwarranted personal attacks by plaintiff.  Additional evidence of improper comments may result in sanctions under the court's discretion.

IT IS THEREFORE ORDERED that plaintiff's motion to compel (ECF No. 63) is denied.

Dated February 10, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

---

[73] ECF No. 85 at 1-2.

17