# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GANIYU AYINLA JAIYEOLA,**

      **Plaintiff,**

      **v.**

                                  **Case No. 2:20-cv-02068-HLT**

**GARMIN INTERNATIONAL, INC.,**

      **Defendant.**

## MEMORANDUM AND ORDER

This is an employment-discrimination case brought by pro se plaintiff, Ganiyu Ayinla Jaiyeola,[1] against defendant Garmin International, Inc. The case is currently before the Court on a show-cause order. Doc. 105. The show-cause order was issued by presiding Chief Magistrate Judge James P. O'Hara and ordered Plaintiff to show cause why this case should not be dismissed as a sanction for his abusive litigation tactics. The undersigned convened a hearing on June 9, 2021, to take up this matter, among other issues, and is now ready to rule.[2]

## I. BACKGROUND

### A. Early Motion Practice

---

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

[2] After the hearing, while the Court had this matter under advisement, Defendant sought a brief extension of time to respond to a pending motion. Plaintiff opposed the request and sought sanctions against Defendant and Defendant's counsel for making the request. Judge O'Hara granted the motion over Plaintiff's opposition. Plaintiff then appealed that order to the Tenth Circuit. The order Plaintiff appealed is an interlocutory order that is not appealable. The Court therefore specifically finds that Plaintiff's notice of appeal (Doc. 162) is frivolous and deficient and does not divest this Court of jurisdiction. *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340-41 (10th Cir. 1976) ("If the notice of appeal is deficient by reason of untimeliness, lack of essential recitals, reference to a non-appealable order, or otherwise, the district court may ignore it and proceed with the case."); *see also In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 4333559, at*5 (D. Kan. 2020).

In considering the issues currently before the Court, it is important to have a detailed understanding of the history of this litigation. This routine employment-discrimination case has been acrimonious from the start, largely due to Plaintiff's actions. Defendant initially answered the complaint and also filed a partial motion to dismiss. Doc. 10. Defendant's answer apparently referred to the position Plaintiff applied for by a different name. In response to the motion to dismiss, Plaintiff cited this error, labeled it a "fraud on the Court," and argued that Defendant's counsel should be sanctioned. Doc. 12 at 11; Doc. 13 at 1 n.1. Plaintiff also sought leave to file a surreply, referencing in part the "fraud on the Court" allegation. Doc. 14 at 5. The then-presiding district court judge, Judge John W. Broomes, denied the motion for leave to file a surreply, Doc. 15, and subsequently granted in part and denied in part the partial motion to dismiss. Doc. 17. Judge Broomes did not address Plaintiff's "fraud on the Court" allegation.

Judge O'Hara subsequently held a scheduling conference on September 29, 2020. Doc. 18. Although Plaintiff proceeds in forma pauperis, Doc. 6, he later purchased a transcript of that conference, Doc. 26. Shortly after, Defendant moved for a protective order governing discovery and indicated that Plaintiff opposed the request. Docs. 22-23. Plaintiff's response accused Defendant's counsel of bad faith. Doc. 29 at 8-10. Judge O'Hara later granted the motion for protective order based on good cause shown. Doc. 39 at 4.

On November 5, Plaintiff filed his <u>first</u> motion to disqualify Judge O'Hara. Docs. 35-36. Plaintiff accused Judge O'Hara of antagonism and "badgering" at the scheduling conference because he raised the issue of Plaintiff's litigation history and his financial ability to pay for depositions. Doc. 36 at 10-13. Plaintiff argued this was an abuse of discretion and showed favoritism and antagonism, which required Judge O'Hara to recuse. *Id.* at 12-13. Judge O'Hara denied the motion, Doc. 38, and Plaintiff promptly objected, Docs. 42-43. The case was reassigned

to the undersigned while these objections were pending. Doc. 49. The undersigned subsequently overruled Plaintiff's objections. Doc. 51. In that order, the undersigned explained the deferential standard for review of non-dispositive orders,[3] *id.* at 1, and addressed but rejected Plaintiff's arguments, noting that, upon review of both the transcript and audio recording of the scheduling conferences, Judge O'Hara's decision to not recuse was not clearly erroneous and that Judge O'Hara "was professional and occasionally firm but not disrespectful or inappropriate," *id.* at 4-5.

Discovery apparently then progressed for a brief period. Plaintiff noticed the deposition of a defense representative, John Mudd, for January 21, 2021. Doc. 60. Plaintiff's deposition was noticed by Defendant for February 18. Doc. 70.

On January 8, shortly after noticing the deposition of Mudd, Plaintiff filed a motion for protective order to prevent Defendant's corporate representative from attending depositions of any fact witnesses. Docs. 61-62.[4] The request was based on Plaintiff's belief that Defendant's employees have committed fraud at the direction of Defendant's in-house counsel and that any corporate representative present at a deposition will potentially coach the witness. Doc. 62 at 5-9. Judge O'Hara promptly denied the motion based on the District of Kansas's Deposition Guidelines, which specifically permit attendance by party representatives. Doc. 65 at 1-3. Plaintiff sought reconsideration of this ruling the next day. Docs. 67-68. The request for reconsideration was largely identical to the underlying motion. Judge O'Hara denied the motion for reconsideration, Doc. 71, and that same day Plaintiff appealed that ruling to the undersigned on grounds that Judge O'Hara abused his discretion, Docs. 73-74. The undersigned overruled the objection. Doc. 75.

---

[3]   The standard of review is "clearly erroneous or contrary to law." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988).

[4]   Plaintiff requested expedited review of this motion, a practice he has continued for nearly every motion since.

On January 12, Plaintiff filed a motion to compel, again requesting expedited review. Docs. 63-64. Plaintiff sought an order compelling Defendant to produce several documents that had been redacted or withheld as privileged. The redactions apparently relate to notes or emails made at the direction of or sent to Defendant's in-house counsel after Plaintiff made his initial complaint of discrimination. Plaintiff believed that these redactions conceal a fraud and that the crime-fraud exception to attorney-client privilege applies. Defendant filed a response defending the claims of privilege, Doc. 86, and in reply, Plaintiff made substantive arguments in favor of the motion but also reiterated his claims of fraud and requested sanctions against Defendant for either directing or allowing the fraud, Doc. 96. On February 10, Judge O'Hara denied Plaintiff's motion to compel in a detailed order. Doc. 97. Judge O'Hara found the claims of privilege valid and noted that Plaintiff failed to support the claims of fraud. *Id.* at 7-14.

At the conclusion of that order, Judge O'Hara also addressed "Plaintiff's Litigation Tactics." First, Judge O'Hara noted that Plaintiff includes a lengthy and repetitive factual narrative at the start of every motion, memorandum, and reply. Noting appreciation for Plaintiff's "efforts to provide context," Judge O'Hara asked Plaintiff to "make a good-faith effort to trim his filings down to only the essential facts and arguments for that particular issue." *Id.* at 15-16. Second, Judge O'Hara cautioned Plaintiff against using brackets within legal citations to insert his own arguments into the caselaw. *Id.* at 16-17. Third, Judge O'Hara warned Plaintiff "about the impropriety of antagonistic comments directed toward defense counsel," which was apparently a reference to some correspondence between the parties that had been attached to Defendant's response.[5] Judge O'Hara stated, "The court is not aware of any behavior of defense counsel even

---

[5] One of the exhibits was an email memorializing a call between Defendant's counsel and Plaintiff. At the conclusion of the email, Defendant's counsel stated the following:

> At various times during our call this morning you stated that you were researching me, personally (referring several [sic] to where I went to school by name, making derogatory comments about my

coming close to meeting this standard and will not tolerate threats or unwarranted personal attacks by plaintiff. Additional evidence of improper comments may result in sanctions under the court's discretion." *Id.* at 17.

Plaintiff filed an objection to that order on February 17. Doc. 100. That objection, which remains pending, requested the following relief: that Judge O'Hara recuse; that the order denying the motion to compel be set aside; that the warning to Plaintiff about his litigation tactics be stricken; that Defendant be compelled to produce the underlying documents; and that Defendant's employees be sanctioned for fraud. Doc. 100 at 4-5. Plaintiff also accused Defendant's counsel of "concoct[ing] a litany of lies" regarding the statements she made in the email correspondence. Doc. 100-1 at 15; *see also supra* footnote 5. Plaintiff also argued that Judge O'Hara violated due process by including the warning in the order without first gathering evidence on the issue from Plaintiff. Doc. 100-1 at 16.

Meanwhile, Plaintiff filed a <u>second</u> motion to disqualify Judge O'Hara on January 22. Docs. 81-82. The motion was based in part on the fact that Judge O'Hara allegedly demonstrated bias by ruling on Plaintiff's motion for a protective order but not ruling on the motion to compel. Doc. 82 at 7.[6] Judge O'Hara denied the second motion for disqualification, Doc. 83, and Plaintiff

education), that you would be filing an ethics complaint against me, and on at least two occasions you indicated that you believed I would be disbarred (or was heading down the road of disbarment). When I asked what I had done to support an ethics complaint and disbarment you refused to tell me. I told you that you had crossed the line and your comments were inappropriate. I renew my request that in emails and during our meet and confer conferences that you cease attacks on my integrity and threats. You can certainly make a legal argument and state your legal position without the threatening and inflammatory attacks.

Doc. 85-2 at 3.

[6] Plaintiff's motions were filed on January 8 (motion for a protective order) and January 12 (motion to compel). Judge O'Hara denied the motion for a protective order on January 12 based on the District of Kansas Deposition Guidelines. The motion to compel was ruled on February 10, one day after it was fully briefed. Plaintiff's dissatisfaction with Judge O'Hara's timing for resolving these motions apparently stems from Judge O'Hara's decision not to expedite briefing on the motion. Doc. 66. In so ruling, Judge O'Hara noted that Plaintiff had sought an extension of time to file the motion to compel, and as a result, he was disinclined to expedite briefing so that the deposition of Mudd could go forward as previously noticed by Plaintiff. *Id.* The undersigned notes that at the

sought review by the undersigned two days later, Docs. 87-88. The undersigned again overruled Plaintiff's objections. Doc. 98.

On February 18, shortly after Judge O'Hara denied the motion to compel and warned Plaintiff about his litigation tactics, Plaintiff filed a motion to sanction Defendant's counsel for misconduct. Doc. 103. That motion alleged that the statements made in the email, which Judge O'Hara noted in his order, were lies and that Defendant's counsel should be sanctioned. *Id.* at 2-3.[7] On February 19, Judge O'Hara also denied Plaintiff's motion to serve additional interrogatories beyond those previously allowed based on a failure to meet and confer and for lack of good cause shown. Doc. 104.

Around this time, however, discovery came to a halt. After certain email correspondence between the parties was forwarded to Judge O'Hara's chambers, Judge O'Hara entered a text entry on February 17 staying all discovery given an ongoing dispute that had recently been brought to his attention, noting that a written order would follow. Doc. 101.

### B.      Show-Cause Order

On February 19, Judge O'Hara issued a show-cause order. Doc. 105. The show-cause order began by detailing the history of the case outlined above. The stay of discovery and show-cause order was initiated sua sponte after Defendant's counsel requested a conference on February 12. The previous day, Plaintiff had contacted Defendant's counsel to postpone the deposition Plaintiff had noticed of defense witness Mudd, as well as Plaintiff's own deposition that had been noticed by Defendant and was scheduled for February 18. *Id.* at 7; Doc. 105-1 at 1-3. The reason for the

---

time of that order, there were still at least two-and-half months left in discovery, and Judge O'Hara resolved the motion within one day of it becoming ripe.

[7]   This motion is still pending. But as explained below, the Court finds Plaintiff's allegations against Defendant's counsel to be baseless and without support, and thus finds Plaintiff has not set forth any grounds to impose sanctions against Defendant's counsel. *See infra* Section II.C. The Court therefore denies Plaintiff's motion for sanctions (Doc. 103).

postponement was that Plaintiff intended to appeal Judge O'Hara's order denying the motion to compel to the undersigned, and then seek an interlocutory appeal if needed. Doc. 105-1 at 5. Plaintiff informed Defendant's counsel that he "will NOT do any defendant witness deposition or be deposed until the decision in ECF if [sic] fully appealed; which may go all the way to the 10th Circuit." *Id.* In responses to requests by Defendant's counsel to confer, Plaintiff indicated he was not available to discuss the matter save for a 15-minute window between 10am-11am that day, and would not be available at all on February 15, 16, or 17—the three business days preceding his scheduled deposition. *Id.* at 2; Doc. 105 at 7. Judge O'Hara noted that the "net result of all this is that plaintiff has succeeded in unilaterally bringing the case that he filed to a screeching halt." Doc. 105 at 8. This history, the dispute about the depositions, and the subsequent motion for sanctions against Defendant's counsel led Judge O'Hara to proclaim, "Enough is enough!" *Id.*

Citing Rule 11, Judge O'Hara found that "Plaintiff has made numerous frivolous filings," including seeking reconsideration or review (or both) of nearly every order, despite those rulings being largely discretionary. *Id.* at 9. Judge O'Hara acknowledged Plaintiff's pro se status but noted that it did not relieve him from complying with the rules. *Id.* at 10. Judge O'Hara noted that Plaintiff frequently files for review without good cause to do so, relying instead on conclusory statements. *Id.* at 11. Judge O'Hara correctly noted that the undersigned had discerned no errors in any of his rulings and that Plaintiff had "abused the procedural vehicles of this court." *Id.* Noting that the case "cannot be litigated efficiently" on its current path, Judge O'Hara vacated the scheduling order and stayed all discovery.[8] *Id.* at 12.

---

[8]   Judge O'Hara also stayed Defendant's response deadline to Plaintiff's objection to the motion-to-compel ruling (Doc. 100) and to the motion for sanctions (Doc. 103). Doc. 105 at 12.

In accordance with Rule 11(c)(3), Judge O'Hara ordered Plaintiff to show cause to the undersigned by March 5 why this case shouldn't be dismissed as a sanction for abusive litigation tactics. He also ordered Plaintiff to show cause why he should not be made to reimburse Defendant for at least some of the attorney's fees incurred in responding to his frivolous filings. *Id.* at 12-13. Finally, he ordered Plaintiff to represent that he was "able and willing to abide by controlling rules of procedure, case law, and the court's discovery orders and, just as importantly, refrain from filing frivolous discovery motions and equally frivolous motions for review of routine discovery rulings." *Id.* at 13.

To date, Plaintiff has never directly responded to the show-cause order. Instead, he filed more motions. On February 25, Plaintiff filed a motion for certificate of appealability. Docs. 108-109. That motion requested that the undersigned certify an interlocutory appeal to the Tenth Circuit on the questions of (1) whether Judge O'Hara's "judicial cognizable misconduct" is grounds for reversible error, and (2) whether the lack of a specific and detailed long history of Rule 11 violations in the show-cause order was grounds for reversible error. Doc. 109 at 9.

To take up that motion and the show-cause order, and to "manage expectations" and "set the tone for this case" going forward, the undersigned set this matter for an in-person hearing for May 7 in the Kansas City, Kansas courthouse. Doc. 112 at 2. That order also cautioned the parties that "[g]oing forward the Court anticipates an in-person hearing on any motion, objection, or appeal filed before the undersigned so that this Court can efficiently manage its docket and re-establish the tone of the litigation." *Id.*

## C.    Motions Leading Up to the Hearing

The hearing did not occur on May 7. Shortly after the undersigned issued the order setting the hearing, Plaintiff filed a motion for reconsideration of that order. Docs. 113-114. That motion

also requested that Judge O'Hara be recused from this case because of judicial bias. Doc. 114 at 2-3. The undersigned set a telephone conference to take up the motion for reconsideration. In the few days before that telephone conference took place, Plaintiff filed a motion to appoint a special master, Docs. 117-118, and a third motion to disqualify Judge O'Hara, Docs. 120-121.[9]

The motion to appoint a special master sought appointment of a third party to investigate both Judge O'Hara and Defendant's counsel and employees, partly on grounds that prior orders by Judge O'Hara had referenced the undersigned's rulings, which apparently rendered the undersigned a witness in the case who could not decide these issues. Doc. 118 at 3-8. The third motion to recuse Judge O'Hara alleged that Judge O'Hara demonstrated judicial bias by statements made in the show-cause order and in other rulings. Doc. 121 at 10-11. The undersigned initially removed the referral of the third motion to disqualify. But the following day, the undersigned reconsidered that order and referred the motion to Judge O'Hara, as it is common for a judge to handle motions for recusal brought against themselves. Doc. 125.

On the phone conference on April 29, the undersigned denied Plaintiff's motion for reconsideration of the in-person hearing and reiterated that the hearing would go forward as scheduled. Doc. 122. Plaintiff immediately filed an interlocutory appeal of the minute entry for the call to the Tenth Circuit. Doc. 123.[10] In light of the appeal, the Court canceled the May 7 hearing. Doc. 127.

While the interlocutory appeal was pending, Plaintiff filed two more motions. The first sought reconsideration of the order referring the third disqualification motion back to Judge O'Hara. Docs. 128-129. That motion suggested that initially removing and then reinstating the

---

[9]   In addition to the three formal motions, Plaintiff has requested Judge O'Hara's recusal in several other filings, as noted throughout.

[10]   Plaintiff purchased a transcript of that hearing. Doc. 134.

referral was an abuse of discretion and as a result, the <u>undersigned</u> should now recuse herself on grounds of perceived bias. Doc. 129 at 2-3. Plaintiff's second motion filed while the appeal was pending was for a scheduling order, which requested that a scheduling order be issued so that discovery could resume. Doc. 130 at 3. Defendant's response deadline to these motions were stayed until 14 days after the Tenth Circuit issued its mandate. Doc. 131.

The Tenth Circuit dismissed Plaintiff's interlocutory appeal for lack of jurisdiction on May 19. Doc. 136. The minute entry from the April 29 phone conference was not a final or immediately appealable order, and thus the appeal was dismissed. *Id.* Following that dismissal, the undersigned rescheduled the in-person hearing for June 9, indicating that the Court would take up the show-cause order (Doc. 105), the motion for certificate of appealability (Doc. 108), and the motion to appoint a special master (Doc. 117) at the hearing. Doc. 137.

Plaintiff immediately moved for reconsideration of that order. Docs. 138-139. That motion sought reconsideration of the hearing, recusal of both judges, and requested that Plaintiff's other motions be considered and decided. Doc. 139 at 3.

On May 25, the undersigned granted Plaintiff's request to reconsider the referral of the third motion to disqualify, but then substantively denied the motion to disqualify Judge O'Hara. Doc. 140. The undersigned also denied Plaintiff's request to reconsider the hearing and denied Plaintiff's other requests for both judges to recuse. *Id.* at 8-9. In that order, the undersigned stated:

> The Court will hold the June 9, 2021 in person hearing as scheduled. It is unlikely that the Court will resolve any additional motions until after that hearing. <u>To be clear, an unruled motion that is either currently pending or subsequently filed will not excuse either party from appearing at this hearing absent Court order.</u> Absent further order, the Court will conduct the June 9, 2021 hearing as scheduled and the parties are ordered to attend. In addition, further motions for reconsideration about the June 9, 2021 hearing will likely be summarily denied and may prompt filing restrictions or result in other sanctions.

*Id.* at 9 (footnote omitted). Immediately following this order, Plaintiff filed a motion to vacate the show-cause order, ostensibly under Rule 60, even though the show-cause order is not a final order. Docs. 141-142. This motion, which remains pending, challenges the issuance of the show-cause order and includes allegations of misconduct against both Judge O'Hara and Defendant's counsel and employees. Plaintiff also filed a motion for reconsideration of the order in Doc. 140, and again requested recusal of both judges. Doc. 147. The Court denied the motion reconsideration, noting that it "merely rehashes arguments that the Court has <u>repeatedly</u> rejected." Doc. 150 at 2.

Around this time, Defendant sought an extension of time to respond to the motion for a scheduling order until after the June 9 conference. Doc. 143. Plaintiff initially told Defendant he did not oppose the motion. Doc. 144 at 3. But after it was filed, Plaintiff changed his mind and filed an opposition. *Id.* The Court granted the motion and extended Defendant's response deadline until 7 days after the June 9 hearing. Doc. 145.

That same day, Plaintiff filed a motion to continue the June 9 hearing, Doc. 146, and a slightly different but substantively identical amended motion a few days later, Doc. 149. In these motions, Plaintiff sought to continue the June 9 hearing based on his unilateral determination that the motion for a scheduling order (Doc. 130) should be taken up at the hearing, and that because Defendant's response deadline had been extended, the hearing must be continued as well. Noting that "Plaintiff does not control what motions the Court considers and when," the Court denied the motion. Doc. 150 at 4. The Court reiterated that the June 9 hearing will go forward as scheduled and will address the show-cause order (Doc. 105), Plaintiff's motion for certificate of appealability (Doc. 108), and Plaintiff's motion to appoint a special master (Doc. 117). *Id.* Because Plaintiff had previously been warned about filing repetitive motions, the Court informed Plaintiff that "<u>any future filings aimed at reconsidering, rescheduling, continuing, vacating, or otherwise obstructing</u>

the June 9, 2021 hearing will likely result in a monetary sanction of $200." *Id.* Plaintiff was also again cautioned that any unruled motion that is either currently pending or subsequently filed will not excuse his appearance at the hearing. *Id.* at 5.

Plaintiff did file an additional motion to continue the status conference. Docs. 151-152. The Court denied the motion but did not impose monetary sanctions because the Court was able to determine that Plaintiff submitted the motion to the Clerk's office for filing right before the Court filed its order threatening monetary sanctions. Doc. 153. But the Court did state that "Plaintiff is warned that the Court will very likely impose monetary or other sanctions on any further filings of this nature." *Id.*

The next day, Plaintiff sent to chambers via email a copy of a Petition for Mandamus he had filed with the Tenth Circuit. On June 8, the Tenth Circuit filed a letter in this case confirming that an original mandamus action had been opened in the Tenth Circuit. Doc. 155. That action requests that the Tenth Circuit disqualify both the undersigned and Judge O'Hara, that it vacate the show-cause order, and that it issue an emergency stay of the June 9 hearing. *See In re Jaiyeola*, Case No. 21-3100 (10th Cir.).[11] Plaintiff paid the $500 filing fee.

On June 8, Plaintiff emailed chambers and stated that the mandamus action had been filed along with a request for an emergency stay, that "Plaintiff expects the Court to cancel the hearing scheduled for June 9, 2021 (tomorrow)" because the district court cannot have a hearing on issues that are pending before the Tenth Circuit, and that the "Court should NOTIFY Plaintiff if the Court is going ahead with the hearing tomorrow." The Court responded and informed Plaintiff that the hearing would go forward as scheduled absent an order from the Tenth Circuit because the filings did not divest the Court of jurisdiction or stay the case. Plaintiff responded, stating that "[t]he

---

[11]  The Tenth Circuit has not yet taken any action in the mandamus action.

Court will be wrong to go ahead with the hearing tomorrow" based on Plaintiff's belief that the mandamus action divested the Court of jurisdiction. Plaintiff later emailed stating that he had been in contact with the Tenth Circuit's clerk's office to inquire about the timing of a ruling on his request for a stay.[12]

D.      June 9 Hearing

The Tenth Circuit did not issue any orders staying the June 9 hearing, and the hearing went forward as scheduled.[13] Plaintiff, Defendant's counsel, and Defendant's corporate representative appeared. Judge O'Hara also attended at the invitation of the undersigned.

At the start of the hearing, Plaintiff lodged an objection, stating, "[t]his hearing is wrong" in light of his pending Tenth Circuit mandamus action. Plaintiff contended that his attendance was "totally unnecessary" and that, although he obeyed the Court by attending, "anything decided at this level is appealable all the way to the U.S. Supreme Court. District court doesn't have the final say. . . . This hearing is wrong by case laws." The Court noted Plaintiff's objection but informed him that a pending mandamus action does not automatically divest a district court of jurisdiction, *see, e.g.*, *Moore v. Busby*, 92 F. App'x 699, 702 (10th Cir. 2004), before continuing with the hearing.

The Court proceeded to take up the motion to appoint a special master (Doc. 117) and the motion for certificate of appealability (Doc. 108). After hearing arguments, the Court denied both motions. Plaintiff declared he planned to appeal both rulings. The Court then took up the show-cause order. Both parties provided detailed argument about the disputes in this case going back to

---

[12]   Defendant's counsel was copied on these emails.

[13]   As stated on the record during the hearing, and as indicated during the April 29 phone conference, the Court held the hearing in person after having found it could safely do so considering the factors in District of Kansas Administrative Order 2021-5

the start, ostensibly related to whether the show-cause order was warranted in the first place. After approximately two hours, the Court took the show-cause order under advisement and adjourned the hearing.

The following day, Plaintiff filed an objection to the presence of Judge O'Hara at the hearing. Doc. 158. Plaintiff alleged that Judge O'Hara was present for most of the hearing, that he sat in the jury box, that he "was glaring at Plaintiff in an [sic] hostile manner from his seated position and when he walked around in the Courtroom," that Judge O'Hara "got up a few times and walk [sic] towards the door (to the back of Plaintiff) and that placed him to the right back of Plaintiff and much closer to Plaintiff than from his sitting position," and that Judge O'Hara conferred with the undersigned during the hearing. *Id.* at 2. Plaintiff contends he "was harassed by the hostile environment the Magistrate created by his presence and actions" during the hearing. *Id.* at 3. He contends the undersigned ought to have prevented Judge O'Hara from attending the hearing. *Id.*

## II.    FINDINGS

It is now for the undersigned to determine whether Plaintiff has satisfied the show-cause order, whether sanctions are appropriate, and if so, what those sanctions should be. On this point, the Court first notes that Plaintiff has never directly responded to the show-cause order. Rather than address the concerns raised by Judge O'Hara in the show-cause order, Plaintiff has instead attacked the very existence of the show-cause order itself. But it is clear from his many other filings, and from his statements at the hearing, that Plaintiff contends that (1) the show-cause order was not warranted, (2) he does not engage in repetitive or frivolous filings, (3) his misconduct allegations against the Court and Defendant's counsel are meritorious, and (4) his own conduct or

litigations habits are appropriate. Accordingly, the Court makes the following findings on those four issues.

### A.       Show-Cause Order

The Court first finds that the show-cause order was warranted and that Judge O'Hara was warranted in issuing it. As detailed in the Background Section above, Plaintiff's conduct has been combative, abusive, and vexatious. He has shown an unwillingness to follow Court orders or rules of procedure. And despite being previously warned, Doc. 97 at 15-17, his conduct has continued unabated.

Second, the Court finds that Plaintiff's repeated attacks on the show-cause order are unavailing. He outlines those attacks in his motion for certificate of appealability, Doc. 108, and his motion for appointment of special master, Doc. 117. The Court denied both motions at the June 9 hearing because neither supported the relief sought and instead simply sought to elevate the show-cause order to a different authority for review. *See* Doc. 157. Additionally, Plaintiff's claims that he was denied due process are unavailing. *See Mellott v. MSN Commc'ns, Inc.*, 513 F. App'x 753, 754 (10th Cir. 2013) ("There is no merit in Mr. Olsen's contentions that the district court impermissibly expanded the proceedings sua sponte, denied him due process by declining to allow him to testify as a witness, or impermissibly imposed the inherent-power sanction without undertaking any further proceedings (such as an additional hearing) after the remand.").

Third, Plaintiff has also sought to vacate the show-cause order under Rule 60. Docs. 141-142. The Court previously declined to rule on this motion before the hearing because Plaintiff was forewarned that any pending or newly filed motions would not continue the June 9 hearing, and Plaintiff's motion appears to be a thinly veiled attempt to do just that. But considering the motion now, the Court first notes that to the extent Plaintiff intended this filing to be his response to the

show-cause order, it is untimely by almost three months. Second, Plaintiff's attempt to set aside the show-cause order under Rule 60 is not appropriate, as Rule 60 applies to final orders only. *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 212 F. App'x 760, 765 (10th Cir. 2007). The show-cause order is not a final order. It is an interlocutory order, as is any ruling on Plaintiff's motion to vacate the show-cause order, which is not otherwise appealable. But even to the extent the Court is empowered to reconsider interlocutory orders, *see id.*, Plaintiff has not demonstrated he is entitled to the relief he seeks. Rather, as detailed in this order, the Court finds the show-cause order to be an appropriate response to Plaintiff's conduct. Accordingly, his motion to vacate the show-cause order (Doc. 141) is denied.

Fourth, the Court finds that Plaintiff has failed to substantively respond to Judge O'Hara's show-cause order. At the hearing, Plaintiff indicated that his motion for certificate of appealability was his response. But that motion primarily sought to appeal what Plaintiff characterized as judicial misconduct. Although Plaintiff has filed many other documents that challenge the existence of the show-cause order, impugn Judge O'Hara for filing it, or demand that it be vacated, he has never shown cause in writing why this case should not be dismissed, why he should not be made to pay Defendant's attorney's fees, or whether he is willing and able to abide by controlling rules of procedure, case law, or the Court's orders, and refrain from filing frivolous motions. *See* Doc. 105 at 12-13.

## B.   Repetitive, Frivolous, and Abusive Filings

At the June 9 hearing, Plaintiff denied he has ever made any repetitive filings in this case. The Court disagrees and finds Plaintiff has engaged in repetitive, frivolous, and abusive filings. Plaintiff has filed no less than three formal motions to disqualify Judge O'Hara and has raised the issue in several other filings as well. Plaintiff has also sought recusal of the undersigned or sought

sanctions against Defendant several times. The fact that these filings have not been identical or have been titled differently does not mean that they are not repetitive or abusive.

The Court also finds Plaintiff has abused motions for reconsideration or review. While these motions are generally available to all litigants in all cases, they are relatively rare. But Plaintiff has filed at least five motions for reconsideration and at least four motions for review, in addition to the myriad other motions filed which often seek similar relief. As noted by Judge O'Hara, many of these motions are regarding orders within the Court's discretion, and Plaintiff has failed to apply the appropriate deferential standard. In many of Plaintiff's motions for review, he alleges the underlying decision was clearly erroneous or contrary to law, but never points to any evidence supporting this conclusion. In many of Plaintiff's motions seeking review or reconsideration, Plaintiff makes little to no effort to actually apply the standard he recites. The Court, as it has in nearly every order, acknowledges that Plaintiff is pro se, and that his briefs are therefore given more latitude. *Hall*, 935 F.2d at 1110. But Plaintiff's briefs also demonstrate that he is a more-skilled pro se advocate than most. He clearly researches and cites to generally applicable legal standards. But his demands for relief are generally just conclusory.

The Court also finds that Plaintiff files motions or appeals or takes other actions to improperly and unilaterally manipulate the schedule in this case. For example, to avoid the in-person hearing, Plaintiff filed several motions before filing an interlocutory appeal that at least briefly delayed the hearing. After that improper appeal was dismissed and additional motions were denied, Plaintiff filed a mandamus action and then demanded the Court continue the hearing as a result. To be clear, the Court acknowledges the authority of the Tenth Circuit to review any final or otherwise appropriately appealable orders of this Court and will abide by Tenth Circuit orders. But Plaintiff's conduct, along with statements made at the hearing, indicate that he files in the

Tenth Circuit so that he can stop the proceedings in this case. He is abusing the district court as well as the appellate court for his own benefit. He also filed motions to continue the hearing because he had independently determined other motions should be taken up instead. *See, e.g.*, Doc. 146 at 4 ("If the Scheduling Order is not going to be part of the status conference on June 9, 2021, Plaintiff wants the Court to reschedule the status conference till after June 16, 2021."). Notably, this motion came just three days after the Court issued an order stating, "The Court will hold the June 9, 2021 in person hearing as scheduled. . . To be clear, an unruled motion that is either currently pending or subsequently filed will not excuse either party from appearing at this hearing absent Court order." Doc. 140 at 9. Again, the Court does not deny litigants the right to seek relief where appropriate. But Plaintiff's conduct crosses the line and seeks to unilaterally control the case to suit his own needs only.

## C.      Misconduct Allegations Against Court and Defense Counsel

The Court next finds that Plaintiff's repeated allegations of judicial misconduct and bias are not only baseless and unwarranted, but they represent an inappropriate intent to delay this case and baselessly attack anyone who crosses Plaintiff. As the Court has frequently ruled during this case, there are no circumstances in this case that would call into question the neutrality of either Judge O'Hara or the undersigned. Rather, Plaintiff seems to respond to any order he does not like with allegations of bias, which is neither proper nor productive. While the Court does not deny that a litigant has the right to raise issues of judicial misconduct where warranted, seeking to disqualify judges is more of the rule for Plaintiff than the exception, as discussed further below. The Court finds this repeated conduct calls into question the good faith of Plaintiff's claims.

The Court further finds Plaintiff has levied inappropriate misconduct allegations at Defendant's counsel, including in briefs, a motion for sanctions, and during communications

18

between the parties. Plaintiff's statements in briefs and the motion for sanctions speak for themselves. He has accused Defendant, Defendant's counsel, and many of Defendant's employees of fraud, alteration of documents, or other unethical conduct. To date, the Court has seen no evidence that would support any of these accusations.

At the June 9 hearing, and in other briefs, Plaintiff argued that it was wrong of Judge O'Hara to include a caution about the impropriety of antagonistic comments directed toward defense counsel in the show-cause order without first investigating and giving Plaintiff a chance to tell his side of the story. This is not correct. *See Mellott*, 513 F. App'x at 754. The undersigned also notes that Plaintiff <u>was</u> given a chance to tell his side of the story—by responding to the show-cause order. That is quite literally the point of a show-cause order. But Plaintiff never did. Instead, he argued that Judge O'Hara committed misconduct by issuing the show-cause order in the first place.

Plaintiff also denied that he ever threatened Defendant's counsel with an ethics complaint, impugned her credentials, or said she was on a path to disbarment. The Court does not find Plaintiff's denials on this issue credible. Defendant's counsel provided the Court with emails between her and Plaintiff summarizing phone calls, as became her practice during the course of this litigation. When she asked Plaintiff to stop making derogatory comments about her personally and professionally, *see supra* footnote 5, Plaintiff never denied making those statements in the follow-up email.[14] Instead, he reiterated that Defendant should file a motion if it had any issues with Plaintiff. Given Plaintiff's conduct in this case, the Court finds it <u>incredible</u> that Plaintiff would not have denied Defendant's counsel's statements at the time had they not been true. Indeed,

---

[14] Defendant's counsel provided the Court with a copy of this email at the hearing. It is attached to the minute entry. Doc. 157. The timestamp on the emails reflects a one-hour time difference, which makes the response emails appear to have been sent before the emails they were responding to.

at <u>several</u> points during the hearing, Plaintiff called Defendant's counsel a liar or said she was not being truthful. He also suggested that Defendant eventually would replace her as counsel for her misconduct. Given these considerations, as well as Plaintiff's other conduct in this case, the Court finds Plaintiff has baselessly, inappropriately, and unfairly attacked Defendant's counsel.

### D.      Plaintiff's Conduct

The Court next finds that Plaintiff has resisted nearly all efforts to manage this case going forward, especially as it relates to the June 9 hearing. That hearing was initially scheduled specifically to reestablish the tone and path forward in this case. *See* Doc. 112 at 2. An order setting a hearing in a case with contested issues is generally unremarkable. But in this case, it spawned a telephone conference, eleven motions, an interlocutory appeal, and a petition for mandamus. Plaintiff's conduct is very clearly an abuse of the judicial process and the Court's right to control its own docket.

The Court further finds that Plaintiff's conduct leading up to and during the June 9 hearing was disrespectful and underscores the apparent disdain he has for the Court's authority. As described above, Plaintiff informed the Court via email that he "expects the Court to cancel the hearing" and that the "Court will be wrong to go ahead with the hearing tomorrow." At the hearing, he stated that it was "wrong" and that compelling his attendance to "mingle" with Defendant was "totally unnecessary." While the Court does not expect litigants to uniformly agree with its rulings, it does expect them to respect those rulings. To Plaintiff's credit, he did appear at the hearing. But his tone, demeanor, and attitude towards both the Court and Defendant's counsel, both leading up to and during the hearing, was at times disrespectful.

The Court also finds that Plaintiff is unrepentant for this behavior in this case. Indeed, he placed most of the blame on a "conspiracy" by Judge O'Hara, whom he also accused of lying. He

recognized that he files a lot of things but indicated he would continue this practice unchanged to preserve issues for appeal. The only prudent change Plaintiff sees to make going forward is to start recording all conversation with Defendant's counsel. The Court finds Plaintiff's lack of contrition, recalcitrance, and want of introspection troubling.

Finally, and significantly, following the hearing Plaintiff filed an "Objection" to Judge O'Hara's presence at the hearing. Doc. 158. In that Objection, Plaintiff makes several allegations, including that Judge O'Hara "was glaring at Plaintiff in an [sic] hostile manner from his seated position and when he walked around in the Courtroom," that Judge O'Hara "got up a few times and walk [sic] towards the door (to the back of Plaintiff) and that placed him to the right back of Plaintiff and much closer to Plaintiff than from his sitting position," and that Judge O'Hara conferred with the undersigned during the hearing. Doc. 158 at 2. Plaintiff alleges he "was harassed by the hostile environment the Magistrate created by his presence and actions . . . ." *Id.* at 3.

To be clear, Judge O'Hara attended the June 9 public hearing at the invitation of the undersigned. He sat respectfully in the jury box during the hearing. The undersigned presided over and observed the hearing and specifically finds that <u>at no time</u> did Judge O'Hara glare at Plaintiff, in a hostile manner or otherwise. Judge O'Hara's position in the jury box was on the opposite corner of the courtroom from where Plaintiff sat. Judge O'Hara did stand up and walk to the gallery to confer briefly with his law clerk, who was also in attendance. But he always remained on the opposite side of the courtroom from Plaintiff. After Defendant provided an email for the Court's review, the undersigned shared the document with Judge O'Hara, who then shortly thereafter apologetically informed the undersigned that he had to step out to attend to other court matters. The Court therefore specifically and directly rejects Plaintiff's suggestion that Judge O'Hara's presence at the hearing created a hostile environment. The Court finds Plaintiff's objection to be

without merit. This objection simply reflects Plaintiff's continued and unfounded attempt to baselessly attack a member of the judiciary.

> ### E.  Plaintiff's Other Litigation

Finally, the Court addresses Plaintiff's conduct in other cases. Plaintiff has filed at least three cases in other districts. The Court takes judicial notice of those cases. *See Samuels v. McDonald*, 723 F. App'x 621, 622 n.1 (10th Cir. 2018) (taking judicial notice of another court's public docket); Fed. R. Evid. 201(b)(2) (allowing a court to take judicial notice of a fact that cannot be reasonably disputed because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The Court also notes that Plaintiff mentioned one of these other cases during the hearing. Plaintiff's conduct in these other cases demonstrates a troubling pattern and supports the conclusion that his conduct in this case is not isolated.

In an earlier employment-discrimination case filed by Plaintiff in 2000, he was initially represented by counsel, but his counsel later sought to withdraw because "the actions [Plaintiff] wishes me to take are frivolous" and despite being told as much, Plaintiff was not deterred. *See Jaiyeola v. Carrier Corp.*, Case No. 5:00-cv-01578-LEK-GJD, Doc. 69 at 2-3 (N.D.N.Y. Jan. 30, 2008). In another employment-discrimination case, Plaintiff was initially represented by counsel. After that relationship broke down, counsel withdrew, and Plaintiff proceeded pro se. After that point, Plaintiff began filing motions for reconsideration of orders, motions to strike, and other objections. *See generally Jaiyeola v. Federal-Mogul Corp.*, Case No. 1:09-cv-01130-PLM (W.D. Mich.).

More recently, Plaintiff has extensively litigated a products-liability action in the Western District of Michigan. *See Jaiyeola v. Toyota Motor N. Am. Inc.*, No. 1:17-cv-562 (W.D. Mich.) (referred to here as "*Toyota*" and with reference docket numbers in that case). That case shares

many similarities with this case. Plaintiff has frequently sought reconsideration and filed numerous frivolous motions. The court in *Toyota* eventually found that Plaintiff "unreasonably taxed this Court's very limited resources with numerous motions that are patently frivolous" and issued a "Warning to Plaintiff" that "in the event he again files such meritless or frivolous motions or pleadings, the Court will impose sanctions on Plaintiff sufficient to curtail such conduct, up to and including dismissal of Plaintiff's lawsuit." *Toyota*, Doc. 183 at 12-13.[15]

In that same case, after several rulings by the magistrate judge, Plaintiff moved for disqualification under 28 U.S.C. § 455 on grounds that the magistrate judge was biased and prejudiced against him (*Toyota*, Docs. 254, 266)—something Plaintiff has also repeatedly sought in this case for both the undersigned and Judge O'Hara. Plaintiff also sought sanctions against defense counsel for misconduct—something he has also done here.

The court eventually granted summary judgment to the defendants in the *Toyota* case. *Id.* at Docs. 260, 304, 305. But even after the case was terminated, Plaintiff sought to disqualify a newly reassigned magistrate judge on grounds that she was biased and prejudiced, *id.* at Doc. 332, as well as the assigned district judge, *id.* at Doc. 339. Because of "Plaintiff's continued, repetitive filings," Plaintiff was placed on Restricted Filer status, and no additional filings by Plaintiff were permitted "absent an order of the Court upon a motion for leave to file by Plaintiff, showing good cause for the filing." *Id.* at Doc. 342 at 2-3.

On appeal, Plaintiff reiterated his claims of judicial bias and misconduct, but the Sixth Circuit rejected them. *Jaiyeola v. Toyota Motor N. Am., Inc.*, 2021 WL 518155, at *5 (6th Cir. 2021) ("Jaiyeola alleges that the magistrate judge and the district court judge were both biased

---

[15] Examples of these motions include a motion to sanction opposing counsel for viewing Plaintiff's LinkedIn internet profile, motions to disqualify opposing counsel, and extensive litigation over whether Plaintiff should be able to bring his four children, three of whom were under the age of 10, to depositions.

against him, thus requiring their recusal or disqualification. . . . Jaiyeola has failed to make such a showing").[16] The Sixth Circuit generally affirmed the district court's decisions but remanded for consideration of a motion that had been improperly deemed moot. The district court denied that motion on remand, *Toyota*, Doc. 352, but Plaintiff is currently seeking reconsideration of that ruling, *id.* at Doc. 353. In his request for reconsideration, Plaintiff has requested the court appoint a special master to investigate whether the defendant lied in its summary judgment briefing—again, something he has requested in this case. The Court notes that, although judgment was entered in *Toyota* on August 5, 2019, filings in that case have continued fairly steadily through May 2021.

In citing these other cases, the Court does not opine on the propriety of any order or ruling in those underlying cases. Nor does the Court dispute that a party is within their rights to file a non-frivolous motion where necessary. Rather, these cases, and *Toyota* in particular, demonstrate that Plaintiff's conduct in this case is not an aberration. Rather, Plaintiff's conduct in this case appears to be his modus operandi. These other cases underscore the observations of this Court that Plaintiff is disinclined to litigate in good faith and fully submit himself to the authority of any court or abide by the Federal Rules of Civil Procedure. He repeatedly challenges rulings, unduly taxes judicial resources, and where he cannot succeed on the merits, he turns to allegations of bias and seeks disqualification of judges.

---

[16] Plaintiff has actually filed two other appeals in the *Toyota* case besides this one. One was denied as interlocutory—just as an earlier appeal in this case was. *Jaiyeola v. Toyota Motor Mfg. N. Am.*, Case. No. 18-1483 (6th Cir.). And another appeal is still pending and is regarding the district judge's imposition of filing restrictions, among other things. *Jaiyeola v. Toyota Motor N. Am., Inc.*, Case No. 21-1002 (6th Cir.).

III.    **ANALYSIS**

Based on the above findings, and particularly on the undersigned's own observations of Plaintiff, the Court finds that sanctions are warranted. The Court must next consider what those sanctions should be.

A court has an inherent power to regulate the activities of vexatious or abusive litigants after appropriate notice is given. *Ayala v. Holmes*, 29 F. App'x 548, 551 (10th Cir. 2002). Rule 11(b) of the Federal Rules of Civil Procedure states that, for every pleading, filing, or motion submitted to the Court, an attorney or unrepresented party certifies that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that all claims or "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that factual contentions have evidentiary support. Under Rule 11(c)(3), the Court is empowered to order a party "to show cause why conduct specifically described in the order has not violated Rule 11(b)." If, after notice and opportunity to respond, a court determines that a party has violated Rule 11(b), it may impose sanctions. *See King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018). These sanctions must be limited to what can deter future bad conduct. *Id.* The imposition of sanctions under Rule 11 is within the discretion of the court. *Id.* at 1147.

One available sanction is dismissal. *Id.* at 1149-50. Although dismissal is an "extreme sanction" not "to be taken lightly," it is a permissible option, because "district court judges need to be able to control their courtrooms." *Id.* at 1149. In considering whether dismissal or some lesser sanction is appropriate, the Tenth Circuit requires consideration of five factors. These factors are:

(1)    the degree of prejudice to the opposing party caused by the misconduct;
(2)    the amount of interference with the judicial process;
(3)    the culpability of the litigant;

> (4)     whether the party has been warned that dismissal would be
>          a likely sanction for noncompliance; and
> (5)     the efficacy of lesser sanctions.

*See id.* at 1150.[17] The first three factors aid the Court in deciding whether to apply any sanction.

*Id.* at 1150 n.15. The last two inform on whether dismissal or a lesser sanction is appropriate. *Id.*

### A.     Degree of Prejudice to Defendant

The first factor considers the prejudice to the opposing party. On this point, the Court has

no trouble concluding that Plaintiff's conduct has been prejudicial to Defendant. This is a

straightforward employment-discrimination case. It has now been pending for a year and a half

and should now be in the midst of dispositive-motion briefing. But because of Plaintiff's conduct,

it has been stalled since at least February, with discovery still unfinished. Additionally, Plaintiff's

repetitive filings have undoubtedly caused Defendant to incur unnecessary fees. At the hearing,

Defendant's counsel indicated that Defendant had incurred over $8,000 in fees since the issuance

of the show-cause order, not including the time spent preparing for and attending the hearing.

Accordingly, the Court finds Defendant has been prejudiced by Plaintiff's conduct. This factor

suggests that a sanction of some sort is warranted.

### B.     Interference with Judicial Process

The second factor considers the interference with the judicial process. As found above,

Plaintiff has engaged in frequent and repetitive filings that have consumed an <u>inordinate</u> amount

of the Court's limited time and resources. For example, the in-person hearing was originally

noticed on April 14. Doc. 112. From that time until June 9, when the hearing finally occurred,

Plaintiff filed eleven motions, one appeal (which forced the hearing to be rescheduled), and a

---

[17]   The Tenth Circuit has recognized that these factors are appropriately considered for cases arising under Rule 11 or a court's inherent power to sanction. *King*, 899 F.3d at 1150.

mandamus action with the Tenth Circuit. The Court also had to convene a phone conference to discuss the in-person hearing. Up until the day before the hearing, Plaintiff was emailing chambers, stating that he "expect[ed]" this Court to cancel the hearing. These repeated and mostly frivolous filings and Plaintiff's disregard for the Court's authority to manage its case unduly interfered with the judicial process. *See Quarrie v. N.M. Inst. of Min. & Tech.*, 621 F. App'x 928, 934 (10th Cir. 2015).

Accordingly, this factor weighs in favor of imposing sanctions. Further, the amount of disruption caused by Plaintiff forces the Court to consider dismissal with prejudice as a possible sanction. *See King*, 899 F.3d at 1151 ("Greater degrees of obstruction help justify a dismissal sanction.").

### C.     Culpability of Litigant

The third factor is the culpability of the litigant. This factor weighs in favor of sanctions. The difficulties in this case appear to be driven exclusively by Plaintiff and his unrelenting litigation habits. The Court acknowledges that Plaintiff is pro se. But being pro se does not excuse him from complying with the Federal Rules of Civil Procedure or court orders. The Court also notes that many of Plaintiff's filings in this case came <u>after</u> he was sanctioned for similar conduct in the Western District of Michigan. *See Toyota*, Doc. 342 at 2-3 (filing restrictions entered December 16, 2020).

The Court notes that Plaintiff claims that he was once told by a judge on the Sixth Circuit that he must seek review or reconsideration of every order to preserve it for appellate review. While most issues must be presented to a district court at least once to preserve an issue for appeal, the Court is unaware of any rule that requires motions for reconsideration or review to preserve an

issue for appeal. Nor can this mistaken belief be squared with the repeated cautions Plaintiff has been given about his repetitive or frivolous filings habits.

Finally, the Court notes that Plaintiff has been unremorseful about his conduct and does not agree that any of his conduct was inappropriate. At the hearing, he refused to acknowledge that he has ever filed repetitive or frivolous motions. He also argued that the show-cause order demonstrates a conspiracy against him by Judge O'Hara and that Judge O'Hara lied. The only change he recommended going forward was that Plaintiff should record all his conversations with Defendant's counsel.[18] Plaintiff's obstinance on this issue presents a troubling lack of accountability and lends weight to a finding of culpability.

Based on the analysis of these first three factors, the Court is convinced that some form of sanctions is appropriate and necessary. *See King*, 899 F.3d at 1150 n.15. Accordingly, it turns to the remaining two factors to determine whether dismissal or some lesser sanction is appropriate.

### D.      Prior Warnings

The fourth factor asks whether Plaintiff has been warned that dismissal could result as sanction. Where warnings have been given, dismissal as a sanction is more appropriate. *Id.* at 1153. Here, Judge O'Hara specifically cautioned Plaintiff to show cause why this case should not be dismissed as a sanction for abusive litigation tactics—a caution Plaintiff essentially ignored. Doc. 105 at 12. Judge O'Hara also ordered Plaintiff to confirm that he is willing and able to follow the rules, court orders, and to refrain from filing frivolous discovery motions and frivolous motions for review. *Id.* at 13. The undersigned has also warned Plaintiff that monetary or other sanctions

---

[18]   Plaintiff also said he believed Defendant should get another attorney because Defendant's counsel "has really made this certainly toxic."

may result from further abusive filings. Accordingly, the Court finds Plaintiff was given fair warning that his conduct may result in sanctions, including dismissal.

### E.   Efficacy of Lesser Sanctions

The fifth factor is the efficacy of lesser sanctions. This requires the Court to consider whether dismissal or some lesser sanction would be appropriate. "Where lesser sanctions would be effective, a dismissal sanction is less likely to be justified." *King*, 899 F.3d at 1153. On this point, the Court notes that it has spent substantial time considering what sanctions are appropriate in this case. Any sanction must account for the prejudice to Defendant and the abuse of judicial resources, and it must also sufficiently chastise Plaintiff and provide a workable path forward for this case—if the case is to survive.

Frankly, the Court harbors doubt that any lesser sanction than dismissal will be effective. To this end, the Court notes Plaintiff's conduct in his other litigation. In the *Toyota* case, Plaintiff was given several warnings and was eventually given filing restrictions. But his filings continued, and they have continued despite judgment in that case being entered nearly two years ago. Thus, it is questionable whether filing restrictions will deter Plaintiff.

It is also unclear whether monetary sanctions will impact Plaintiff's conduct. This Court previously threatened to impose a monetary sanction of $200 for any additional motions to continue the June 9 hearing. Doc. 150 at 4. Instead, Plaintiff changed tactics and filed an original action with the Tenth Circuit seeking that same relief, for which he paid a $500 filing fee. At the hearing, Plaintiff indicated he lives on disability benefits and pay-day loans. But he is clearly willing and able to spend money on this case, as he has filed three appeals and ordered several transcripts. Thus, although it appears Plaintiff could afford to pay at least some monetary sanctions, it is unclear whether monetary sanctions will be effective in deterring his conduct.

The Court has also considered allowing this case to proceed while imposing limitations on future discovery and more stringent oversight. However, Plaintiff's conduct leading up to the June 9 hearing demonstrates that such restrictions may only exacerbate the situation and expend even more judicial resources, given that Plaintiff seems unwilling to accept the authority of any judicial officer with whom he disagrees.

## IV.    SANCTIONS AND ORDERS

Based on the above background, findings, and analysis, the Court finds that it would be well within its discretion to dismiss this case with prejudice as a sanction for Plaintiff's misconduct. But the Court acknowledges that dismissal is a severe result. And where this case could reach resolution on the merits under strictures of lesser sanctions, the Court is inclined to take that path and give Plaintiff a <u>final</u> chance.

Accordingly, the Court imposes the following sanctions and orders to manage this case going forward.

- Plaintiff's deposition will take place in person at the Kansas City, Kansas courthouse <u>within 30 days of this order</u>. The deposition will be scheduled on a date that Judge O'Hara is available to preside over any disputes that arise. Plaintiff is permitted to lodge non-frivolous objections to questions as appropriate, but he will be required to answer questions after lodging the objections in accordance with Rule 30(c)(2). Any attempts by Plaintiff to frustrate, postpone, continue, reschedule, reconsider, or otherwise obstruct this deposition will likely result in additional sanctions, including <u>dismissal with prejudice</u>.

- Discovery in this matter will close within 45 days of this order.[19] Any attempts by Plaintiff to frustrate, postpone, continue, reschedule, reconsider, or otherwise obstruct the close of

---

[19]   This deadline reinstates the approximate timeline of discovery from the time the show-cause order was entered. Discovery was originally scheduled to close on March 31, 2021, Doc. 19 at 2, but Judge O'Hara stayed discovery on February 17, *see* Doc. 101.

discovery will likely result in additional sanctions, including <u>dismissal with prejudice</u>.

- Plaintiff may re-notice the deposition of John Mudd to occur within the remaining time for discovery.[20]

- Either party may notice up to <u>two additional depositions</u>, to be completed within the remaining time for discovery. To the extent <u>both parties consent</u>, these depositions may occur by remote means, such as Zoom. Otherwise, the depositions will take place in person at the Kansas City, Kansas courthouse. To the extent either party determines additional depositions are warranted, they may file an appropriate and targeted motion.[21]

- Previous limitations on interrogatories and requests for admission remain. *See* Doc. 19 at 5. The parties may serve additional interrogatories or requests for admission only to the extent that party had not yet exhausted the limits as of February 17, when discovery was stayed. All written discovery must be commenced or served in time to be completed by the close of discovery.

- Deadlines in the original scheduling order that had expired as of February 17 will not be reset.

- Any further motions filed by Plaintiff that are denied and deemed frivolous by this Court will result in at least a $200 monetary sanction but may include additional sanctions, including <u>dismissal with prejudice</u>. Requests to disqualify either the undersigned or Judge O'Hara will be deemed frivolous if based on similar allegations as his previous motions or if sought simply because Plaintiff disagrees with court orders. Improper attempts to appeal interlocutory orders will be deemed frivolous. Plaintiff is cautioned that deficient appeals of non-final orders will not divest this Court of jurisdiction nor excuse his compliance with this order. *See Quarrie*, 621 F. App'x at 934; *Syngenta*, 2020 WL 4333559, at *5. Unwarranted or rote motions for reconsideration or review that fail to set forth valid

---

[20] Mudd's deposition was originally postponed by Plaintiff pending his objection to Judge O'Hara's order denying his motion to compel. *See* Doc. 105 at 7-8. The undersigned takes up and denies Plaintiff's objection below.

[21] At the June 9 hearing, Plaintiff stated that if he is compelled to do his deposition in person, then he will likely insist on in-person depositions for Defendant's employees as well. He further stated, "And they're not going to—they're not going to like it either, because people don't like face-to-face their deposition." Plaintiff is cautioned that he must abide by the District of Kansas's Deposition Guidelines. Any improper conduct during a deposition may result in additional sanctions, including dismissal of this case with prejudice and without further notice.

grounds for reconsideration or review, and which are subsequently denied, will be deemed frivolous. Plaintiff is also cautioned that any other repetitive, abusive, or vexatious motion, including a frivolous interlocutory appeal, may result in additional sanctions, including additional monetary sanctions in the form of attorney's fees or <u>dismissal with prejudice</u>.

- Any contested motion <u>will likely be set</u> for an in-person hearing in Kansas City, Kansas, and <u>will likely be set</u> on short notice given the schedule in this case. Any attempts to frustrate, postpone, continue, reschedule, reconsider, or otherwise obstruct a hearing will likely result in additional sanctions, including <u>dismissal with prejudice</u>.

- Retributive, unsupported, or baseless allegations of misconduct against Defendant or its employees or counsel may result in additional sanctions against Plaintiff, including monetary sanctions or <u>dismissal with prejudice</u>.

- A final pretrial conference will be set by Judge O'Hara for approximately two weeks following the close of discovery. At that time, Judge O'Hara will also set a dispositive-motion deadline. A trial date will be set after dispositive motions are decided to the extent necessary.

- **<u>Finally, Plaintiff is not permitted to file any additional documents in this district court action until he files a one-page certificate in this action certifying that he "has received and read the Court's June 18, 2021 memorandum and order in its entirety." This certificate shall be filed as soon as possible but not later than June 25, 2021. Any filing made in contravention of this directive will be stricken and other sanctions may be imposed, including dismissal with prejudice.</u>**

Plaintiff is strongly cautioned that failure to abide by these sanctions and follow these orders will likely result in the imposition of additional sanctions, **<u>including dismissal of this case with prejudice and without further notice</u>**. Plaintiff is also cautioned that any attempt by him to frustrate, postpone, continue, reschedule, reconsider, or otherwise obstruct these sanctions and orders will likely result in the imposition of additional sanctions, **<u>including dismissal of this case with prejudice and without further notice</u>**.

V.      **REMAINING ISSUES**

Other than the show-cause order, Plaintiff's motion to vacate the show-cause order, and Plaintiff's motion for sanctions, which have already been addressed by this order, the Court addresses the two additional outstanding motions. Plaintiff's motion for a scheduling order (Doc. 130) is granted to extent he seeks a scheduling order for this case and denied as to all other requests. This case will proceed under the terms outlined above.

The only other remaining motion is Plaintiff's objection to Judge O'Hara's order denying his motion to compel. Doc. 100. As explained above, Judge O'Hara denied Plaintiff's motion to compel several documents that Defendant withheld as privileged. Doc. 97. By way of background, Defendant interviewed Plaintiff for an open position in July and August 2019. On November 13, 2019, Defendant informed Plaintiff he did not get the job. On November 22, 2019, Plaintiff emailed two of Defendant's employees and complained about not being hired. He used the phrase "filed a complaint" and cited Defendant's Equal Employment Opportunity statement. On November 25, 2019, Plaintiff filed a complaint with Defendant's HR director. He filed an EEOC complaint on November 26, 2019. *See id.* at 1-2.

At issue are five documents,[22] which Defendant contends are protected by the attorney-client privilege or work-product protection. All were created on or after November 22, 2019. Four are emails involving Defendant's managers or legal counsel regarding the investigation into Plaintiff's complaint of discrimination. Judge O'Hara considered Plaintiff's arguments regarding these emails but found the emails were all appropriately withheld as either privileged or work product. Doc. 97 at 7-12.

---

[22]   Judge O'Hara's order reflects that one of the disputed emails was referenced by two Bates numbers. Doc. 97 at 7.

The fifth document is a document added to the interview notes of Benjamin Dobbs (an engineer who participated in Plaintiff's interview) on November 22, 2019. This document was redacted to reflect communication with Defendant's legal counsel regarding Plaintiff's complaint of discrimination. Plaintiff claims this document reflects fraud. Judge O'Hara found that, other than using the word "fraud," Plaintiff had done nothing to show that the supplemental record to Dobbs's interview notes constitutes fraud or invokes the crime-fraud exception to the attorney-client privilege.[23] Judge O'Hara found the document was otherwise appropriately withheld as either privileged or work product. *Id.* at 12-14. Judge O'Hara also declined Plaintiff's request for *in camera* review, finding there was not a genuine dispute about the propriety of withholding the documents. *Id.* at 15.

Plaintiff objects to this ruling. Doc. 100. Because Plaintiff objects to a non-dispositive order, the Court's scope of review is whether the orders have been shown to be "clearly erroneous or contrary to law." *Ocelot Oil Corp.*, 847 F.2d at 1461-62. Under this standard, a district court affirms the decision of a magistrate judge unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1464 (internal quotation and citation omitted).

Plaintiff argues Judge O'Hara committed clear error by (1) declining to view the documents *in camera*, (2) ignoring "a fraud by the Defendant and thereby ignoring the crime-fraud exception to attorney-client privilege," and (3) warning Plaintiff about his conduct "on conclusory facts."

---

[23] Plaintiff also requested that Judge O'Hara sanction Defendant and its in-house counsel for this conduct, but the request was denied because it was not supported. Doc. 97 at 14.

Doc. 100 at 4.[24] The undersigned has reviewed Judge O'Hara's order and Plaintiff's arguments and finds no grounds to overrule Judge O'Hara's order.

First, Plaintiff argues that Judge O'Hara abused his discretion by not conducting an *in camera* review. Whether to conduct an *in camera* inspection is within a court's discretion. *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 621 (D. Kan. 2014). Plaintiff cites to examples of other cases where judges opted to do an *in camera* review. That does not support a conclusion that it was clearly erroneous for Judge O'Hara to not do one in this case. The undersigned has reviewed his order and finds that he clearly and appropriately identified the governing law of privilege and work product, applied it, and determined he had no need based on Plaintiff's arguments and Defendant's privilege log to conduct an *in camera* review. This ruling was not clearly erroneous or contrary to the law.

Second, Plaintiff challenges Judge O'Hara's ruling regarding Dobbs's notes. Judge O'Hara found Plaintiff had not demonstrated that the crime-fraud exception to the attorney-client privilege applies. Specifically, he found that "Plaintiff hasn't demonstrated that a prima facie case for actionable fraud exists" and "[b]eyond using the word 'fraud,' plaintiff doesn't acknowledge the elements of fraud . . . ." Doc. 97 at 14. Rather, the notes were added to the file after Plaintiff submitted his complaint and Defendant reasonably anticipated litigation. Based on this, the undersigned discerns no clear error. Judge O'Hara considered Plaintiff's arguments, found them to be unsupported or implausible, and applied the correct legal standard to the facts of this case. Plaintiff's arguments on this issue largely just rehash the arguments made in his underlying motion. But this is insufficient to overrule the order.

---

[24] After ruling on the motion to compel, Judge O'Hara included his initial warning to Plaintiff about his litigation tactics. *See* Doc. 97 at 15-17.

Third, Plaintiff challenges the warning Judge O'Hara included at the conclusion of his order about Plaintiff's vexatious litigation conduct. Plaintiff's objection mostly just rehashes his allegations about Defendant's counsel and Judge O'Hara. Given the context of this order and how this litigation has progressed, the undersigned discerns no clear error in Judge O'Hara's order on this point.

THE COURT THEREFORE ORDERS that Plaintiff's Motion to Vacate Show Cause Order (Doc. 141) is DENIED. Plaintiff's Motion for Sanctions (Doc. 103) is DENIED. Plaintiff's Objection to Order of the Magistrate Judge (Doc. 100) is OVERRULED. Plaintiff's Motion for a Scheduling Order (Doc. 130) is GRANTED to the extent he seeks a scheduling order and DENIED in all other respects.

THE COURT FURTHER ORDERS that this case will proceed under the sanctions and orders outlined above. The parties are ordered to confer on dates for Plaintiff's deposition and contact Judge O'Hara's chambers to verify his availability within five days of this order.

THE COURT FURTHER ORDERS that Plaintiff's failure to abide by these sanctions and orders will likely result in the imposition of additional sanctions, including **dismissal of this case with prejudice and without further notice**.

IT IS SO ORDERED.

Dated: June 18, 2021                    /s/ *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE