IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,

    Plaintiff,

    v.

GARMIN INTERNATIONAL, INC.,

    Defendant.

Case No. 2:20-cv-02068-HLT

## MEMORANDUM AND ORDER

This is an employment-discrimination case brought by pro se plaintiff, Ganiyu Ayinla Jaiyeola,[1] against defendant Garmin International, Inc. On Friday, June 18, 2021, the Court issued a 36-page order detailing Plaintiff's vexatious conduct in this litigation, in response to a show-cause order issued by Chief Magistrate Judge James P. O'Hara ("June 18 order"). Doc. 165 at 2-14. The June 18 order made several detailed factual findings. *Id.* at 14-24. It also considered what sanctions were appropriate. *Id.* at 25-30. Based on the findings in the June 18 order and on consideration of appropriate factors, the Court found it would be well within its discretion to dismiss the case as a sanction for Plaintiff's conduct. *Id.* at 30.

Nevertheless, the Court opted to "give Plaintiff a <u>final</u> chance." *Id.* (emphasis in original). It imposed "sanctions and orders to manage this case going forward," including specific limits on discovery[2] and informed Plaintiff that further frivolous motions may result in additional sanctions, including dismissal of this case with prejudice. *Id.* at 30-32.

---

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

[2] Discovery was stayed in February when Judge O'Hara issued the show-cause order. Doc. 101; Doc. 105 at 12.

More particularly, the Court cautioned Plaintiff that "[r]equests to disqualify either the undersigned or Judge O'Hara will be deemed frivolous if based on similar allegations as his previous motions or if sought simply because Plaintiff disagrees with court orders." *Id.* at 31. The Court made this directive because Plaintiff has repeatedly made meritless demands that both the undersigned and Judge O'Hara recuse. *Id.* at 18. The Court repeatedly cautioned Plaintiff in the order that "failure to abide by these sanctions and follow these orders will likely result in the imposition of additional sanctions, **including dismissal of this case with prejudice and without further notice**." *Id.* at 32 (emphasis in original). The Court also limited the remaining depositions in the case to two each, not including the previously noticed depositions of Plaintiff and defense witness John Mudd, with the caveat that if "either party determines additional depositions are warranted, they may file an <u>appropriate and targeted</u> motion." *Id.* at 31 (emphasis added).[3]

On Monday, June 21—the first business day after the June 18 order—Plaintiff filed a motion to disqualify both the undersigned and Judge O'Hara. Docs. 167-168. The motion repeated allegations made in a notice Plaintiff filed following the hearing on the show-cause order (Doc. 158), about Judge O'Hara's presence at the hearing and sought recusal on those grounds. Doc. 167 at 4. Plaintiff also sought recusal of the undersigned for "enabl[ing] and encourag[ing] the Magistrate's harassment and threatening of Plaintiff on June 9, 2021." *Id.* at 4-5. According to Plaintiff, "[b]oth abuses of discretion indicated judicial bias against Plaintiff," requiring both judges to withdraw from this case. *Id.* at 5. The motion also reiterated Plaintiff's previous—and rejected—misconduct claims against Judge O'Hara. *Id.* at 5-6; *see also* Doc. 165 at 18.

---

[3] The number of depositions permitted was based on the remaining time for discovery and the fact that, at the time discovery was stayed, each party had only noticed one deposition each.

On Wednesday, June 23—the third business days after the June 18 order—Plaintiff filed a motion for leave to depose <u>twelve</u> defense witnesses, including Defendant's in-house counsel. Docs. 169-170; *see also* Doc. 85-4 at 2 (declaration of David Kight stating he is employed as Associate General Counsel for Defendant). The only grounds for Plaintiff's motion was that <u>Plaintiff</u> designated these individuals as witnesses in his initial disclosures in 2020. Doc. 170 at 2 (noting that in the initial disclosures "Plaintiff served to the Defendant, Plaintiff identified the 12 defendants that Plaintiff now wants to depose"). The original scheduling order, which was vacated because of Plaintiff's vexatious litigation conduct, only permitted ten depositions to be taken. Doc. 19 at 6. As noted above, the June 18 order limited Plaintiff to a deposition of Mudd and two additional witnesses.

The Court now takes up Plaintiff's motion to disqualify and must consider whether additional sanctions are appropriate given the June 18 order and Plaintiff's subsequent motions. For the reasons discussed below, the Court denies Plaintiff's motion to disqualify and expressly finds that it is frivolous as well as contrary to and in direct contravention of the June 18 order. As a result, the Court dismisses this case with prejudice as a sanction.

**I.   MOTION TO DISQUALIFY**

Plaintiff's motion to disqualify relies on 28 U.S.C. § 455. Under § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The general purpose of this statute is "to promote public confidence in the integrity of the judicial process" and to avoid the "appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988). In the Tenth Circuit, the test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)

(internal quotation and citation omitted). It is an objective standard. *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1310 (10th Cir. 2015).

In Plaintiff's motion, he repeats his allegations regarding Judge O'Hara's conduct at the June 9 hearing. Doc. 168 at 6.[4] He refers to it as "harassment by the Magistrate." *Id.* at 9. But the June 18 order specifically considered these allegations and <u>specifically found them to be without merit</u>, and frankly, untruthful. Specifically, the Court held:

> Finally, and significantly, following the hearing Plaintiff filed an "Objection" to Judge O'Hara's presence at the hearing. Doc. 158. In that Objection, Plaintiff makes several allegations, including that Judge O'Hara "was glaring at Plaintiff in an [sic] hostile manner from his seated position and when he walked around in the Courtroom," that Judge O'Hara "got up a few times and walk [sic] towards the door (to the back of Plaintiff) and that placed him to the right back of Plaintiff and much closer to Plaintiff than from his sitting position," and that Judge O'Hara conferred with the undersigned during the hearing. Doc. 158 at 2. Plaintiff alleges he "was harassed by the hostile environment the Magistrate created by his presence and actions . . . ." *Id.* at 3.
>
> To be clear, Judge O'Hara attended the June 9 public hearing at the invitation of the undersigned. He sat respectfully in the jury box during the hearing. The undersigned presided over and observed the hearing and specifically finds that <u>at no time</u> did Judge O'Hara glare at Plaintiff, in a hostile manner or otherwise. Judge O'Hara's position in the jury box was on the opposite corner of the courtroom from where Plaintiff sat. Judge O'Hara did stand up and walk to the gallery to confer briefly with his law clerk, who was also in attendance. But he always remained on the opposite side of the courtroom from Plaintiff. After Defendant provided an email for the Court's review, the undersigned shared the document with Judge O'Hara, who then shortly thereafter apologetically informed the undersigned that he had to step out to attend to other court matters. The Court therefore specifically and directly rejects Plaintiff's suggestion that Judge O'Hara's presence at the hearing created a hostile environment. The Court finds Plaintiff's objection to be without merit. This objection simply reflects Plaintiff's continued

---

[4] Plaintiff also contends that a "video recording of the Court session" will confirm these allegations. Doc. 168 at 6. There is no video recording of the June 9 hearing.

4

>and unfounded attempt to baselessly attack a member of the judiciary.

Doc. 165 at 21-22 (emphasis in original). Plaintiff was undoubtedly aware of these findings when he filed his motion for disqualification, as he filed an acknowledgment, as he was ordered to do, that he received and read the June 18 order in its entirety. Doc. 166 at 1.

A reasonable person, knowing these facts, would not harbor any doubts about Judge O'Hara's impartiality, nor could a reasonable person conclude that the undersigned "enabled the Magistrate to harass and threaten Plaintiff" by "allow[ing] the Magistrate to be present in the Courtroom," Doc. 168 at 9, during the public June 9 hearing. Plaintiff's allegations against Judge O'Hara are simply factually not true, as previously found. Plaintiff's allegations against the undersigned represent nothing more than a disagreement with a court order.[5]

Nor is the Court persuaded by Plaintiff's argument based on the 2019 Rules for Judicial-Conduct and Judicial-Disability Proceedings. *See id.* Rule 4(a)(2) defines cognizable misconduct as "treating litigants, attorneys, judicial employees, or others in a demonstrably egregious and hostile manner." The Court has already found no misconduct at all linked to Judge O'Hara's presence at the June 9 hearing, and in fact found that Plaintiff's allegations are just an "unfounded attempt to baselessly attack a member of the judiciary." Doc. 165 at 22.

Plaintiff's motion includes some discussion of the "extrajudicial source factor." Doc. 168 at 8-9. But Plaintiff's argument on this point is difficult to follow. He seems to argue that because he filed his "notice" regarding Judge O'Hara's alleged conduct on the day after the hearing, Doc. 156, Judge O'Hara's conduct at the hearing is an "extra judicial source" and "has a higher potential

---

[5] The undersigned set the June 9 hearing specifically to address the breakdown in progress in this case, to "manage expectations," and to "set the tone for this case" going forward. Doc. 112 at 2. The undersigned's decision to invite Judge O'Hara to attend the hearing is hardly objectionable given Judge O'Hara's role in achieving that goal.

5

for generating a situation where the judge's impartiality might reasonably be questioned." *See* Doc. 167 at 4. This argument is nonsensical. To the extent Plaintiff contends that Judge O'Hara's conduct is an "extrajudicial source factor" because Judge O'Hara was not presiding at the hearing, that does not entitle him to relief. In *Liteky v. United States*, the Supreme Court discussed the "'extrajudicial source' doctrine" and concluded "there is not much doctrine to the doctrine." 510 U.S. 540, 554 (1994). It clarified that "an opinion held by a judge [that] derives from a source outside judicial proceedings is not a necessary condition for 'bias or prejudice' recusal . . . . [n]or is it a sufficient condition for 'bias or prejudice' recusal . . . ." *Id.*; *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) ("The [*Liteky*] Court held, however, that acquisition of alleged bias or prejudice from extra-judicial sources is neither a necessary nor sufficient condition for § 455(a) recusal."). It's merely a factor to consider. And as the Court found in the June 18 order, and as reiterated here, there is no merit to Plaintiff's allegations against Judge O'Hara—regarding the June 9 hearing or otherwise—that would merit his disqualification.

Plaintiff may be trying to bolster his claim that Judge O'Hara is biased by characterizing his alleged actions as an "extrajudicial source" to circumvent the Supreme Court's holding, previously cited by this Court, Doc. 140 at 7, that "opinions formed by the judge on the basis of . . . events occurring in the course of the [current] proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (quoting *Liteky*, 510 U.S. at 555). The Court notes on this point that Plaintiff has repeatedly alleged bias or misconduct by both judges in this case for various rulings and decisions, even fairly benign or procedural rulings. *See, e.g.*, Docs. 128-129 (seeking recusal of the undersigned for re-referring a motion to Judge O'Hara). The Court finds Plaintiff's most recent motion to be more of the same regardless of how he characterizes it—he simply

disagrees with how the undersigned and Judge O'Hara have managed this case. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Nor do "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily . . . support a bias or partiality challenge." *Id.* "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556.

Plaintiff's most recent motion is little more than continued combativeness with the Court for its efforts to manage this case. But Plaintiff's apparent hypersensitivity does not warrant recusal. *See Mathis*, 787 F.3d at 1310 (explaining that disqualification is not measured by "the hypersensitive, cynical, and suspicious person" (internal citation and quotation omitted)). Accordingly, Plaintiff's motion to disqualify is patently without merit and is denied.

Further, the Court finds Plaintiff's motion is frivolous. As Plaintiff was previously warned, allegations of bias or misconduct based solely on disagreement with court orders or which rehash issues previously rejected are not proper and will be deemed frivolous. Doc. 165 at 31. The instant motion to disqualify is frivolous because it merely repeats arguments that the Court specifically rejected in the June 18 order.

## II.     SANCTIONS

Having determined that Plaintiff's motion to disqualify is frivolous and without merit, the Court must now consider whether (1) Plaintiff's recent conduct violates the June 18 order, and (2) whether additional sanctions should be imposed.

First, the Court finds that Plaintiff's recent conduct clearly violates the June 18 order. The Court specifically cautioned Plaintiff about filing further motions to disqualify either judge in this case, particularly where the allegations were based on similar allegations previously asserted or

7

where based solely on Plaintiff's disagreement with court orders. *Id.* Plaintiff's instant motion to disqualify is both. The June 18 order also specifically made detailed findings about Plaintiff's baseless, unwarranted, and repeated allegations of judicial misconduct, *id.* at 18-20, including his allegations against Judge O'Hara regarding the June 9 hearing, *id.* at 21-22. Despite these detailed findings and explicit instructions, Plaintiff was only able to resist the urge to seek yet another disqualification for the weekend. Additionally, although the June 18 order permitted the parties to file "an appropriate and targeted motion" if they determined additional depositions were warranted, Plaintiff wasted no time, and expended little effort, in demanding not only more depositions than the June 18 order permitted, but more depositions than the original scheduling order or even the Federal Rules of Civil Procedure permit. Even if not a direct violation of the June 18 order, the motion for additional depositions reflects a clear intent by Plaintiff to not abide by the Court's limitations going forward and to continue his aggressive and vexatious litigation behavior.[6] The Court therefore finds Plaintiff's most recent motion practice violates both the letter and spirit of the June 18 order.

Second, the Court must determine what sanction is appropriate. The June 18 order analyzed the factors that should be considered in deciding whether dismissal or some lesser sanction should be levied. Doc. 165 at 25-30; *see also King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018). The factors considered are the degree of prejudice to the opposing party, the amount of interference with the judicial process, the culpability of the litigant, whether the party has been previously warned, and the efficacy of lesser sanctions. *King*, 899 F.3d at 1150. The Court finds that its

---

[6] The Court notes that at the time of the February stay, Plaintiff had only noticed Mudd's deposition despite roughly six weeks left in discovery. His attempt to now depose twelve additional people in the same timeframe is vindictive and vexatious, especially considering remarks Plaintiff made at the hearing that he may insist on certain onerous procedures for depositions of defense witnesses in retribution for any attempts by Defendant to conduct Plaintiff's deposition in person. *See* Doc. 165 at 31 n.21.

previous analysis in the June 18 order is still applicable and will not repeat it here. But it does consider some of these factors in light of Plaintiff's apparently unrepentant and vexatious motion habits and makes the following additional findings.

Regarding the amount of interference with the judicial process, the Court finds that Plaintiff's actions continue to be disruptive and time-consuming for the Court. The Court has now considered the <u>fourth</u> formal motion to disqualify in a matter of months, which does not even account for the additional similar allegations Plaintiff has made in several other motions he has filed as of late. Despite being limited to a total of three depositions, Plaintiff also immediately moved to depose twelve defense witnesses, apparently undaunted by the Court's admonition that any request to depose more would require "an <u>appropriate and targeted</u> motion." Doc. 165 at 31 (emphasis added). The June 18 order endeavored to put this case on a path to resolution on the merits under terms that would preserve both the rights of the parties and the Court's very limited judicial resources. But Plaintiff's conduct in the literal days since that order was issued demonstrate that he is unwilling to proceed under the limitations imposed and is likely to continue to demand an inordinate share of judicial resources going forward with frivolous motions filed in contravention of court orders. As the Court previously noted, "[g]reater degrees of obstruction help justify a dismissal sanction." *King*, 899 F.3d at 1151.

Regarding the culpability of Plaintiff, the Court previously found that "Plaintiff's obstinance . . . presents a troubling lack of accountability and lends weight to a finding of culpability." Doc. 165 at 28. The Court's finding on this point has only intensified. Despite his acknowledgment that he had read the June 18 order, Doc. 166, Plaintiff seems to have taken none of it to heart.

Regarding prior warnings, the Court previously found that Plaintiff had been repeatedly warned about his abusive litigation tactics and that it could lead to dismissal. Doc. 165 at 28-29. In the June 18 order, the Court warned Plaintiff at least <u>ten</u> more times. *Id.* at 30-36.

The final consideration is the efficacy of lesser sanctions. In the June 18 order, the Court expressed doubt that Plaintiff's conduct could be curbed by anything short of dismissing this case. This was based on the fact that financial disincentives don't seem to deter Plaintiff, that filing restrictions go largely ignored, and that limitations and more stringent oversight seem to only exacerbate things. *Id.* at 29-30. Despite these reservations, the Court was willing to give Plaintiff a <u>final</u> chance to litigate this case, with the caveat of additional limitations, warnings, and oversight. But Plaintiff did not even make it one business day before violating the terms of the June 18 order. This demonstrates to the Court that nothing short of dismissal is likely to be effective in curtailing Plaintiff's abusive litigation habits.

Based on these considerations, as well as on the background, findings, and analysis detailed in the June 18 order (which are incorporated by reference), the Court finds that dismissal of this case with prejudice is the only effective solution. Although a very serious sanction, and one which the June 18 order shows the Court was reluctant to impose, the Court is convinced that it is the only viable path forward, and the only sanction that will match the degree of prejudice to Defendant and the interference with the judicial process instigated by Plaintiff. Further, Plaintiff has been repeatedly warned that his case may be dismissed, and he opted to continue his disruptive behavior by filing yet another frivolous and baseless attack on the judiciary. Although the Court has endeavored to find a solution that would permit this case to go forward to a resolution on the merits, Plaintiff's conduct shows he is unable or unwilling to comply with those conditions. The Court is therefore disinclined to sacrifice further judicial resources on this pyre.

THE COURT THEREFORE ORDERS that this case is DISMISSED WITH PREJDUICE.

THE COURT FURTHER ORDERS that Plaintiff's Motion to Disqualify Magistrate Judge and District Judge (Doc. 167) is DENIED and DEEMED FRIVOLOUS.

THE COURT FURTHER ORDERS that Plaintiff's Motion for Leave to Depose Defendant's 12 Witnesses (Doc. 169) is DENIED AS MOOT.

THE COURT FURTHER ORDERS that this case is closed. Plaintiff is cautioned that continued frivolous or vexatious motion practice in this case may result in the imposition of monetary sanctions or filing restrictions, or both.

IT IS SO ORDERED.

Dated: June 24, 2021                            /s/ *Holly L. Teeter*
                                                HOLLY L. TEETER
                                                UNITED STATES DISTRICT JUDGE